NATIONAL SURETY CO. *v.* BOARD OF SUPR'S HOLMES COUNTY.

[83 South. 8, Division A. No. 20678.]

1. APPEAL AND ERROR. *Failure to object below to misnaming of plaintiff.*

When a suit was brought in the name of the board of supervisors for the benefit of the county, instead of in the name of the county, this was merely a misnomer and if defendant failed to object thereto in the trial court where a proper amendment could have been made, he is precluded from raising such point on appeal, since the county in such case was in court though not named as complainant.

2. INSURANCE. *Service of process upon foreign insurance company.*

The return of service upon a summons in a suit by a county

against a foreign surety company guaranteeing by its bond per-
formance of a road building contract of "executed personally by
delivering to Edgar Mayfield, agent of and for defendant, etc.,"
was an insufficient showing of service of process to support a
decree *pro confesso*, in view of Code 1906, section 937 (Heming-
way's Code, section 4115), making section 920, Code 1906 (Hem-
ingway's Code, section 4094), as to service upon foreign cor-
porations in general inapplicable where the subject-matter is
elsewhere prescribed, and section 2562, Code 1906 (Hemingway's
Code, section 5027), defining insturance companies, and section
2606, clause 4, Code 1906 (Hemingway's Code, section 5069),
as to agents of foreign insurance companies for service of
process; since there was nothing in such return to show that
service was had upon any person appointed and designated as
such agent, nor that any such person was appointed by de-
fendant.

3. EVIDENCE. *Judicial notice of appointment of agent of foreign in-
surance company.*

Courts cannot take judicial notice that the agent of a foreign in-
surance company upon whom process is served is the agent ap-
pointed by the company to receive and acknowledge service of
process, but proof must be made that such appointment was
made and that the process was served upon this identical agent.

APPEAL from the chancery court of Holmes county.
HON. A. Y. WOODWARD, Chancellor.

On suggestion of Error, Suggestion of error in former
opinion, 81 So. 792, 120 Miss.—, sustained in part and
overruled in part. Judgment rendered dismissing com-
plainants bill, set aside and annulled, and decree of
lower court reversed and cause remanded.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson* and *Fultan Thompson*, for
appellant.

The first of the points on which the court asks argu-
ment, "is the designation of the plaintiff (complain-
ant) in the declaration (bill of complaint), as the 'board
of supervisors of Holmes County,' instead of the 'county

of Holmes,' a mere misnomer, which, had it been object-
ed to in the trial court, could have been cured by
amendment, and which, since it was not there objected
to, cannot be raised in this court?"

This question as propounded by the court presents two
separate and independent inquiries; first, the misnomer
proposition; and, second, whether all objections curable
by amendment must necessarily be made in the court of
original jurisdiction.

*Reply to the misnomer propositions.* With all due re-
spect for the court, we submit that to affirm the de-
crees of the chancery court in this case on the ground
that the board of supervisors of Holmes County" is a
misnomer for the "County of Holmes," or for "Holmes
County" will be not only to contradict the record, but
to do violence to the statute, Mississippi Code. 1906, p.
309, providing that: "Any county may sue and be sued
by its name," etc. This statute is an affirmative one and
the only existing authorization for the institution or pro-
secution of a suit to enforce the rights of a county, and
the following section 310, in practically the same words
and having the same legal effect, the only authority for a
suit to enforce the rights of a part of a county. To
affirm the decrees of the chancery court in this case will
be wholly to deny the statute effect. It must be re-
membered, and the proposition cannot be denied, that
without statutory authority neither the board of super-
visors of a county, nor a county itself, can maintain any
suit, wihout an authoritative statute, otherwise provid-
ing suits to enforce the rights of a county, would have
to be brought in the name of the state, the state having
a right to sue by virtue of its sovereignty, a county being
merely a part of the state. As shown in our original
brief in this case, the statutes of this state in force for
thirty-five years preceding the adoption of the Code of
1892 authorized the bringing of suits to enforce the
rights of a county in the name of its board of super-

visors. The present statute, Code of 1892, p. 290, Code of 1906, p. 390, repealed this authorization. To maintain the decrees appealed from in this case will be to deny the repeal of statutes which were manifestly repealed by Code 1892, p. 290, Code 1906, p. 309, and to perpetuate an authorization unquestionably terminated by the enactment of the present statute. Had the existing statute provided in affirmative terms that no suit shall be maintained if brought in the name of the board of supervisors of a county, it would not more clearly have negatived the right of a board of supervisors to bring suits in its own name than does the statute as written negative the right. Should this court hold the words "Board of Supervisors of Holmes County" to be a misnomer for the "County of Holmes." We submit with all due respect to the court, such a holding will be a violation of the statute, a refusal to respect and enforce it, since the bringing of the suit in the name of the board of supervisors is prohibited, impliedly if not affirmatively, and all authorization for so doing has been repealed. An implied statutory prohibition is just as effective as an affirmative one, and surely the present statute (pp. 309, 310, Code of 1906) repealed all previous authorization and warrant for the institution and prosecution of suits by the board of supervisors in its own name, and by necessary implication, as strong as an implication can be, prohibited such suits.

*There is no misnomer in this record.* The suit was instituted and prosecuted in the chancery court by the board of supervisors of Holmes county; and the appeal was resisted in this court by the board of supervisors. This is apparent from the record proper and is shown as well by the briefs of the solicitors for the appellee. The record proper, the bill of complaint, shows the only complainant to be the "board of supervisors of Holmes County," and the briefs of opposing counsel insisted and urged this court to adjudge that the board of supervisors

of Holmes county owned the cause of action sought to be pleaded and had the right to sue in its own name. To ask this court upon this record and following such argumentation to vacate its judgment heretofore rendered in this cause and now to adjudge that the county of Holmes was the complainant, is, we say it respectfully, to invite this court to depart from the truth and to base a judgment upon that which is untrue as a matter of fact.

Where a bill in equity shows upon its face, as does the bill in this case, that the complainant has neither the power to sue nor a vested right to the cause of action, a decree granting such a complainant relief is an erroneous one, irrespective of whether or not the suit was defended in the court of original jurisdiction, and should be reversed on appeal. The second branch of the first proposition submitted by the court for argument.

Do all objections to a declaration or bill of complaint have to be taken in the court of original jurisdiction? We answer most emphatically, No.

A total absence of a right of action may be urged at any stage of the cause, and may be urged for the first time on appeal. *La Casse* v. *New Orleans, etc., Railroad* (La.), 64 So. 1012. The rule that an objection on the ground of a want of capacity to sue cannot be raised for the first time on appeal, does not apply where it appears that plaintiff has no right at all to sue or is not entitled to any relief. *Emmerson* v. *Merritt*, 249 Ill. 538, 94 N. E. 955.

It is well settled that the objection that the complaint does not state facts sufficient to constitute a cause of action in the complaint may be urged for the first time on appeal. *Nichols* v. *Board of County Commissioners of Weston County*, 13 Wyo. 1, s. c. 3 Am. & Eng. Ann. Cases, 543 and the numerous authorities cited by the Wyoming court and in the note (p. 545), to the case in 3 Am. & Eng. Ann. Cases. The rule is that where the error is of a substantial kind and appears upon the face of the record proper, it is error in law and will be corrected by

the appellate court without any exception having been taken in the court of original jurisdiction.

The error complained of in the case at bar is certainly substantial; the decrees complained of having been rendered in favor of a party having no power to sue and in addition is without title to the cause of action sought to be pleaded. The conjoint effect of the two defects is irresistible. The errors appear on the fact of the record proper, and are errors of law. Will this court affirm a decree shown by the record to be in law prejudicially erroneous to the appellant? It is unthinkable.

The second of the propositions on which the court asks argument: "The validity *vel non* of the service of process upon the appellant" had in the case is the second point propounded by the court for argument. Our original proof brief fully discussed, this proposition and leaves but little to be now said on the subject. Section 920, Mississippi Code 1906, provides that in suits against foreign coporations, " in order that defendant corporation may also have effectual notice, it shall be the duty of the clerk to immediately mail a copy of the process to the home office of the corporation by registered letter, the postage and fees of which shall be taxed as other costs."

A copy of the process issued in this case was not so mailed, or mailed at all, although the bill of complaint shows that appellant was and is a foreign corporation, having its home office in New York City. The statute further provides that "the clerk shall file with the papers in the cause a certificate of the fact of such mailing, and make a minute thereof upon the docket; and no judgment shall be taken in the case until thirty days after the date of such mailing." No such certificate was made in this case; in fact, the statute was ignored and violated.

The statute from which we have quoted is the law of this state it is as much the law of process as is any provision of the code to be found in the chapter entitled "processs," or the chapter entitled "Insurance." The

three chapters of the Code of 1906, respectively entitled "Corporations," "Insurance, and "Process" were all adopted April 21, 1906, and all became operative October 1, 1906. See Code, 1906, page, 138, Sec. 11. The location in the code of a particular section is not decisive of the effect or application of its provisions. *Re Andrew Madalina,* 174 Cal. 693, s. c. 164 Pac. 348, s. c. 1 L. R. A. 1629. This proposition was practically decided by this court in *Tutwiler* v. *Gibson,* 117 Miss. 879, s. c. 78 So. 926.

The provisions of Code 1906, p. 920, are the law of the land; they must be respected and enforced; they are limitations upon any section of the code to be found in any of its chapters relating to process. All the sections of the code relating to the sufficiency of process must be read and construed as if they concluded with a "but," followed by the words herein above quoted from section 920; the terms of which provide that "no judgment shall be taken (against a foreign corporation) in the case until thirty days after the date of such mailing," meaning the mailing required by the section. In this way all the provisions of the Code on the subject under consideration can be and are made harmonious. This question, we respectfully submit, has already been decided by this court in the two cases cited in our original brief. *Eminent Household of Columbian* v. *Lundy,* 110 Miss. 881, s. c. 71 So. 16; *Columbia Star Milling Co.* v. *Brand,* 115 Miss. 625, s. c. 76 So. 557.

Some comments on the briefs of the appellee in support of the suggestion of error. The arguments of the appellee's solicitors in support of the suggestion of error, though camouflaged, will be found when analyzed to be identical with their original contentions in this case and in the face of the rule of the court relating to suggestions of error. We say this because no amendment of the bill has been or can be made and no proof offered even tending to show a misnomer. To imagine a misnomer and

give effect to a fanciful one is to contradict the record
to strike from the bill of complaint the real complaint,
the board of supervisors, an existing entity created by
the constitution of the state, and substitute another exist-
ing entity, referred to in naming the real complainant
only in descriptive words. And this the court is asked to
do in the face of the truth, the palpable fact abundantly
shown by the record and the briefs of counsel, that the
suit was actually and intentionally brought by and in
the name of the board of supervisors because the board
or its solicitors were of the opinion that the board had
the right to sue in its own name; and it cannot aid the
bill that said opinion was an erroneous conception of the
law. A suit intentionally brought by the board of super-
visors in the name of the board, can no more be held to
be a suit by the county than could the Florida suit,
*Panama, etc., Co.* v. *Ricker,* 70 So. Rep. 596, brought in
the name of the commissioners constituting a board of
county commissioners be held to be a suit by the county,
and suits so brought cannot by purely mental fancies or
conceptions be transformed into suits by the counties. In
this case the purely fanciful conception, called a "mis-
nomer," contradicts the truth as stated in the last para-
graph of the first page of Mr. Dyer's brief where it is
frankly admitted that the board deliberately used its
name, its corporate designation, in bringing the suit, and
contradicts the record as well.

We are obliged to opposing counsel for citing 11 Cyc.
607; par's. 1 and 2, notes, 46 and 47. The text cited lays
down the general rule contended for by us, that at com-
mon law a county could neither sue nor be sued, and that
the subject of suits by counties are governed by statutes.
The notes to the text cited do not aid appellee; the
Louisiana case, *Police Jury* v. *Mansura,* 107 La. 31 2 So.
650, decides that the suit was properly brought in the
name of Irion, the President of the jury "because, under
the laws of Louisianna, the proper party in whose name

a suit by a parish should be brought, when authority therefor is given by the police jury, is the president of the jury, as was the case here, for and on behalf of the jury." The case of *Anthony* v. *Bank of Commerce,* 97 U. S. 374, cited in note 46 was a suit against a county and involved the construction of the law for South Carolina. The law of that state, while authorizing suits against counties, nowhere provide how or by what name a county could or should be sued. The suit was brought in a United States district court against Anthony and others "as commissioners of the county of Pickens." The county appeared and defended the suit as if it were properly brought. Upon appeal, the supreme court decided that in the absence of a state statute providing how or by what name a county could be sued, the case before it was properly brought against the county commissioners. This court cannot violate the statute, Mississippi Code 1906, p. 309. The other case cited in note 46, *Rock Island County* v. *Steele,* 31 Ill. 543, distinctly holds that where a suit is brought against a county by "any other name than that of the board of supervisors contrary to express statutory provision" it is error and there is no necessity for a plea of misnomer.

This case. The claim made by opposing counsel that sections 309 and 310 of the Code of 1906, or their prototypes in the Code of 1892, have been construed as authorizing suits to enforce the rights of a county, or the part of a county, is wholly unfounded; no such decision has ever been made; the question of the effect of said sections, as we understand, was raised for the first time in this case. A statute cannot be construed in a case where its effect was not presented to or considered by the court.

Our friends, appellee's solicitors, misapply the decision of this court in *Robertson* v. *Bank of Batesville,* 116 Miss. 501, s. c. 77 So. 318. The court in that case said: "The county may institute suit through at least four different officers. The board of supervisors may sue for the coun-

ty; the revenue agent may sue for the county and the attorney general may sue for the county." Opposing counsel failed to see that the court was speaking of suits by the county, and not of suits by officers in their own names. Could a district attorney maintain a suit in his own name, being the plaintiff to enforce a cause of action belonging to a county? Certainly, not, and yet his right to do so is as great as that of the board of supervisors. The court adds: "The county can only be represented (in the institution and prosecution of suits) by officers authorized by law." This is the correct doctrine. The only authority given the board of supervisors to represent the county in the matter of suits to be instituted by it, expressly requires the suits to be in the name of county; only suits brought in the name of the county authorized to be instituted at the instance of the board of supervisors.

The printed brief in support of the suggestion of error. In answer to point I of the printed brief we have to say: The manifest legislative policy evidenced by Code 1906, pp. 309, 310, and corresponding sections of the Code of 1892, was to require all suits to enforce the rights of a county or of a part of a county to be brought in the name of the county and to forbid the same to be brought in the name of the board of supervisors, as had been done for thirty-five years before the adoption of the Code of 1892; any other holding will be violative of the statute itself.

Points II and III of the printed brief have been discussed in our original brief, pp. 3, 4 and 5. Point IV of the printed brief has no relation to or bearing upon the question by whom or in what name suits to enforce the rights of a county are to be instituted and prosecuted. The agents or representatives of a living man cannot sue in their own name to enforce a cause of action belonging to their principal, nor can the agents or repre-

sentatives of the county sue in their own name to enforce a right of a county. The board of supervisors have authority alone to direct suits in the name of the county.

Point V of the printed brief does not, nor can appellee's solicitors, cite any constitutional provision or statute relating to suits to enforce the rights of a county, or a part of a county, except Code 1906, pp. 309, 310, and these sections affirmatively provide that such suits must be instituted and prosecuted in the name of the county. No statute conflicts with or is out of harmony with the sections mentioned; they are the entire law of the subject.

Point VI of the printed brief of opposing counsel does not cite a single decision of this court wherein the question of the right of the board of supervisors to maintain a suit in its own name to enforce the right of a county was presented or decided.

Point VI of said printed brief in peculiar. The conception that the citations of decisions under Code 1906, p. 4698, by the style given them as reported, is itself a construction of the statute, is so attenuated as to refute itself.

Points VII and VIII of said brief announced correct principles, but have no application to this suit. Points IX, X and XI of said printed brief have largely already been answered. There is no pretense by appellant of a misjoiner of parties, either complainants or defendants, and the law of misjoinder is not involved. There is no such thing as a misjoinder of complainants where there is but one complainant. The board of supervisors being the only complainant, we insist that the bill cannot be maintained, because the sole complainant is unauthorized and is without power to sue in its own name and has no title to the cause of action sought to be pleaded; a very different thing from a misjoinder or a nonjoinder.

*E. F..Noel,* for appellee.

With all deference to this court and to each of its members, I respectfully suggest that the court erred in reversing and dismissing this cause by giving too rigid and literal interpretation to the word "county" as used in sections 309 and 310 in the Code of 1906; and that such interpretation conflicts, directly or indirectly, with scores of decisions, involving millions and millions of dollars, which passed hands on the faith of decisions of the court in which the board of supervisors was party, as here, and of many other cases involving property or personal right, all of which are nullified by the ruling in this case.

We submit to the court's consideration certain legal principles and authorities in their support to the court's attention.

Points I. The cardinal rule of construction of statutes is to ascertain and effectuate the legislative intention, to be deduced from the whole statutory law pertaining to the subject. (1) The manifest legislative policy and spirit should control although in conflict with the letter. . (2) To effectuate legislative purposes, courts will give a broader, or more restricted, meaning than mere constitutional or statutory words import. "The primary maxim for interpretation is to read to mean what it is commonly understood to mean." (3) Conjunctive and disjunctive and qualifying and other terms may be substituted or inserted as best accords with spirit and purpose of the act. (4) In construing statutes, we must look to the old law, the mischief, and the remedy. (5) An unjust or unwise purpose in a statute will not be implied to the legislature which enacted it, when any other reasonable construction will avoid such an imputation.

(1) *Grand Gulf Bank* v. *Archer,* 8 S. & M. 151; *Planters Bank* v. *State,* 6 S. & M. 628. (2) *Love* v. *Taylor,* 26 Miss. 567; *Board of Education* v. *M. & O. R. R. Co.,* 27 Miss. 236; *Logan* v. *State,* 53 Miss. 431; *Mitchell* v. *Wood,*

47 Miss. 231; *Witherspoon v. Blewett,* 47 Miss. 570; *Painter* v. *Trotter,* 10 S. & M. 537. (3) *State* v. *Fragiacomo,* 71 Miss. 417, 15 So. 798; *State Board of Education* v. *M. & O. R. R. Co.,* 72 Miss. 236; *Christman* v. *Brookhaven,* 70 Miss. 477, 484. (4) *The State* v. *Louisville R. R. Co.,* 53 So. 454; *Warren* v. *Boothe,* 81 Miss. 267, 32 So. 1000; *Forniquet* v. *The Felliciana R. R. Co.,* 6 M. 116; *Lemonius* v. *Mayer,* 71 Miss. 514; *Bobo* v. *Levee Comissioners,* 92 Miss. 792, 46 So. 819; *Adams County* v. *Catholic Diocese of Natchez,* 110 Miss. 890. (5) *Dixon* v. *Doe,* 1 S. & M. 70; *Grand Gulf Bank v. Archer,* 8 S. & M. 151. (6) *Patterson* v. *Clinghan,* 93 Miss. 310; 47 So. 503.

The cases in which the principle of restricted "statutory authority" were applied are cases in which the authority of the board of supervisors, or their predecessors, to sue or be sued, was not involved, the question being one of substance, to right of action, such as liability of a county for injuries from defective bridges or highways, (1) or where there was an unavailing effort to substitute the county in the place of an official, whose official action was under judicial attack (2) *Sutton & Dudley* v. *Board of Police,* 51 Miss. 236; *Bradhan* v. *Board of Supervisors,* 54 Miss. 363; *State* v. *Vaughan, Supervisors,* 77 Miss. 681; *Rainey* v. *Hinds County,* 79 Miss. 238; *Harrison County* v. *Marione,* 110 Miss. 592, 70 So. 702. (3) *Anderson* v. *State,* 23 Miss. 459, 474, much relied on by opposing counsel, but merely holding there was no misjoinder in not making the county defendant, or codefendant with tax collector in suit to enjoin alleged illegal tax.

II. Before there was any statute authorizing counties to sue or to be sued, the predecessors of the boards of supervisors, first the county court, and afterwards the board of police, as the fiscal representatives of the county were held subject to suit, a matter that escaped the at-

tention of the court, in ·Anderson v. The State, 23 Miss.
474, where that question was not really involved and
where the county was actually represented by an official
exercising the function in controversy, viz; tax collect-
ing, though no statute authorized the suit thus sustained.
Madison County Court v. Alexander, Walker 523-6;
County of Yalobusha v. Carbry, 3 S. & M. 529; Board of
Police v. Grant, 9 S. & M. 77.

III "The board of supervisors is the general repre-
sentative of the county in all fiscal matters. This has been
its character and this its function time out of mind un-
der our system of government." (1)

"It has been held that a county is not liable to suit
for the act of such agent referring to road overseers, con-
tractors of public work and the like, but in the wanton
wrong here alleged to have been committed by the county,
the board of supervisors represent the county." Board
v. Niles, 58 Miss. 48; State v. Fortenbery, 54 Miss. 316;
Choctaw v. Hughes, 83 Miss. 195, 201; Rainey v. Hinds
County, 78 Miss. 308, 315.

Our constitution and statutes prove, that the terms
"board of supervisors and county when county refers
to fiscal affairs of the county are used interchangeably
and indifferently expecially on the subject of roads. The
constitution of 1890, sections 85, 170, 262. The code of
1906, chapter 17, 111 sections, entitled board of super-
visors in dealing with the county in its various fiscal
relations, and three pages of index under the same head-
ing, pages 1400-1403. Hemingway Code, chapter 85, 140
section and part of 17 other chapters, page 1875. Neither
code has any chapter on counties, and the word county is
generally used in an adjective significance.

IV. In the decisions and official reports of this court,
the term "boards of supervisors" and "county" are
often used synonymously. From 69 Miss. 1892, contain-

ing four cases, to our last report, 116 Miss. 1918, containing eight cases with eight cases thus indexed covering the period of the existence of the Code sections in question, 209 and 310, there appear fifty-nine officially reported cases in which board of supervisors were suing or being sued, and that right of liability was directly or impliedly approved by this court. A list of fifty-nine cases, not embracing many in Southern Reporter not officially reported in part of my original brief. These were various sorts of suits, including Mandamus (1); Injunction (2); *Certiorari* (3); Actions for indebtedness due to the county. ( )4, or by the county (5); Bills to quiet title (6); *Habeas Corpus* (7); Prohibition (8).

V. In some of these cases able judges, speaking for this court used the terms mentioned synonymously in same or closely connected sentences (9); the indexes and head lines of official reported cases thus used the two terms from among the earliest to the latest (10); on the very day the instant case was argued, this court sustained the right of the board of supervisors to conduct litigation involving the validity of five hundred thousand dollars bond issue (11). (1) *Robinson* v. *Board of Supervisors*, 105 Miss. 90; *Burns* v. *Board of Supervisors*, 102 Miss. 390; *Anderson* v. *Board of Supervisors*, 75 Miss. 873; *Chatters* v. *Board of Supervisors*, 73 Miss. 351; *Board of Supervisors* v. *Weatherford*, 75 So. 114. (2) *Rosenstock* v. *Board of Supervisors*, 112 Miss. 124, involving nine hundred and fifty thousand dollars, bond issue; *Ainsworth* v. *Board of Supervisors*, 102 Miss. 749; *Warren* v. *Mastronardi*, 76 Miss. 273, 275; *Native Lumber Co.* v. *Board of Supervisors*, 89 Miss. 171; *Lang* v. *Board of Supervisors*, 114 Miss. 241; *Board of Supervisors*, v. *Bourgeois*, 118 Miss. 163; *Board of Supervisors* v. *Owen*, 100 Miss. 462; *Thomas* v. *Board of Supervisors*, 118 Miss. 319. (3) *Word* v. *Board of Supervisors*, 114 Miss. 446; *Rodger* v. *Board of Supervisors*, 114 Miss. 326; *Keelon* v.

*Board of Supervisors,* 117 Miss. 72. (4) *Board of Supervisors* v. *King,* 115 Miss. 521; *Powell* v. *Board of Supervisors,* 65 So. 499; *Board of Supervisors* v. *Helton,* 29 So. 820; *Board of Supervisors v. Jones,* 60 So. 655. (5) *Board of Supervisors* v. *G. & S. I. R. R. Co.* 118 Miss. 243; *Board of Supervisors* v. *Warden & Barrett,* 115 Miss. 311; *Board of Supervisors* v. *Wright,* 72 So. 226. (6) *Board of Supervisors* v. *East Miss. Mills Co.,* 16 So. 210. (7) *Board of Supervisors* v. *Leigh* 69 Miss. 74. (8) *Lindsey* v. *Board of Supervisors,* 69 Miss. 815. (9) *Board of Supervisors* v. *State,* 70 Miss. 769, 776-7. (10) *Warren County* v. *Boothe,* 81 Miss. 267; *Warren County* v. *Mastronardi,* 76 Miss. 276; *County of Yalobusha* v. *Carby,* 3 S. & M. 529; *Anderson* v. *Issaquena County,* 75 Miss. 872-876; (Headlines) *Leflore county* v. *State,* 70 Miss. 770-8; (Headlines) *Board of Supervisors* v. *Miles,* 58 Miss. 48. (11) *Robertson* v. *Board of Supervisors,* 81 So. 508, VI. Section 4698 of the Code of 1906, section 4197 of the Code of 1892, contains a provision for bringing suit in the name of the county additional to sections 309 and 310 of the Code of 1906 and their originals in the Code of 1892. The styling of the first two cases annotated under that section that the direct and absolute decision of the first case mentioned in an authoritative construction of the statutory law as authorizing ordinary suits in the name of the board of supervisors for pecuniary demands due a subdivision of the county, an exact case in point, and published in the code of which a member of this court, its former honored chief justice, was the leading codifier, as a part of the statutory law, authoritatively construed and published. Code of 1906, sec. 4698, being sec. 4147 of the Code of 1892; *Osborn* v. *Supervisors,* 71 Miss. 19, 14 So. 57; *Wright* v. *Supervisors,* 71 Miss. 800, 15 So. 116.

VII. When an English statute, having a fixed judicial construction, is enacted here, it is received with the

interpretation placed upon it there. *Marqueze* v. *Caldwell,* 48 Miss. 23. VIII Where a constitutional provision has been re-adopted or a statute re-enacted, the prior construction upon it, even though deemed erroneous will be adhered to. *Lindsley* v. *Coahoma County,* 69 Miss. 813; 825-6; *Shotwell* v. *Covington,* 69 Miss. 355, 357; *White* v. *I. C. R. R. Co.* 97 Miss. 91, 55 So. 593; *Hemner* v. *Yazoo Delta Lumber Co.,* 100 Miss. 349. Many of the cases in Point V construing section 309 and 310 as authorizing suits by and against the board of supervisors, were rendered before the adoption of the Code of 1906, carrying into that code that construcion.

IX. If the board of supervisors be not a term synonymous and interchangeable with county still under authorities cited under Point IV they are the county's agents and general representatives, and as such can sue for the county and if it be an error, it is a mere misjoinder and will not avail the defendant unless set up in the lower court. Whitehouse, Equity Practice, sec. 77, p. 155-7; *Mitchiner* v. *Robins,* 73 Miss. 383; *Railway Co.* v. *Boldwin,* 69 Miss. 263; *Sauffer* v. *Garrison,* 61 Miss. 67; *Walker* v. *Hall,* 66 Miss. 390; *Jackson* v. *Dunbar,* 68 Miss. 288; *Darrill* v. *Dodds,* 78 Miss. 912; *McInnis Lumber Co. v. Rather,* 111 Miss. 55; Code of 1906, secs. 599, 722, 687.

X. "The county may institute suit through at least four different officers: The board of supervisors may sue for the county; the district attorney may use for the county; the revenue agent may sue for the county; and the attorney general may sue for the county. The county is an intangible and artificial person, that can only be represented by officers authorized by law." *Robinson* v. *Bank of Batesville,* 116 Miss. 501, 507-8.

XI. The Constitution, sec. 170, declares the board of supervisors shall have full jurisdiction over roads, fer-

ries and bridges to be exercised in accordance with such
regulations as the legislature may prescribe. Without
the right to sue in questions involving roads, the juris-
diction conferred would be fatally impaired. The denial
of such a right if attempted by the legislature, under
this constitutional provision would be a nullity. *Holmes
Couny* v. *Black Creek Drainage District,* 55 So. 963;
*State ex rel. Salter* v. *Board of Supervisors,* 72 So. 700.

*W. L. Dyer,* for appellee.

Upon another ground, the decree of the chancellor
should be affirmed. It has the support of the unbroken
doctrine in this state, that the supreme court will not
consider objections to the decree, raised in the supreme
court for the first time, when these objections were not
called to the attention of the court below.

In *Pressly* v. *Knowles,* 4 How. 93, on this point, the
court says this principle "will be adhered to, as one
which is essential to maintain the true purposes of an ap-
pellate jurisdiction and to prevent injustice and oppres-
sion." In *Doe v. Natchez Ins. Co.,* 8 S. & M. 204, Chief
Justice SHARKEY says: "It is a general rule that ques-
tions cannot be raised in this court which were not raised
in the court below. It is our duty to review the de-
cision of the court below, but if we decide new ques-
tions not raised there, we assume original jurisdiction.
This rule should not be relaxed, unless where the evi-
dence offered and objected to consists of matters of rec-
ord, and even then the proriety of departing from the
rule may be questionable." *Bank of Manchester v. Mar-
tin,* 9 S. & M. 621. Citing the previous case and others in
support, this principle has been adhered to steadily by
the court under a vast variety of circumstances, and the
citations might be multiplied indefinitely. We content our-
selves with the citation of a few. *Anderson* v. *Leland,*
48 Miss. 255; *Griswold* v. *Simmons,* 50 Miss. 141; *Good-*

*man* v. *Mitchell,* 38 So. 658; *George* v. *Railroad,* 88 Miss.
312; *Beason* v. *Coleman,* 92 Miss. 625; *Anderson* v. *Maxwell,* 94 Miss. 139; *Mfg.* v. *Sup. Co.,* 94 Miss. 289; *Owens*
v. *Waddell,* 87 Miss. 310. In the case of *Owens* v. *Waddell,* 87 Miss. 315, in which the jurisdiction of the court
was challenged.

In this connection we request the court to examine the
case of *Jerfferson Davis County* v. *Lumber Co.,* 94 Miss.
535. "Jefferson Davis County, plaintiff, by its board of
supervisors," instituted the suit, and its rights to do so
was challenged on the ground that the state had never
auhorized counties or the board of supervisors thereof
to institute such suits. The court says, p. 536, "a county
is a politicial subdivision of the state created for the pur-
pose of acting 'for the state in local matters whose
powers are exercised by a board of supervisors." There
is no distinction that can be drawn by a reasonable man
between the "board of supervisors of Holmes county who
sue, etc.," and Holmes County by its board of super-
visors who sue, etc." This is a question that must be
decided by the record, so frequently referred to by my
friend, and not the opinion of myself or opposing coun-
sel. My friends try to obscure the question by argument
on the right of the county to recover. The county sues
only in a representative capacity for the district; the
right party is before the court at last, the district. The
question of misnomer is clear.

The second inquiry of the court is addressed to the
question of the validity *vel non* of the service on the
defendant. This would not occasion us any concern,
except that the inquiry is made by the court; of the
validity of the service, we have no doubt. To establish
this involves the consideration of sections 919 and
920, which is apparently in conflict with other sections of
the Code. It may be premised that, ordinarily statutes
using the terms, "judgments by default," are limited
in construction to judgments at law, and do not include.

decrees *pro∘confesso*. If the court should be of the opinion that in this case it does, for the same reason, Rule 11 would apply to the decree, and it would be affirmed.

∘ We say further that the amendatory act of section .919, chapter 123, Laws of 1908, is an implied repeal of the whole of section 920; the provisions are utterly inconsistent. But be that as it may, the court will notice that both sections are confined in their action to corporations found "doing business in the state" and has no relation to other classes of corporations. The legislature has carefully limited its scope and effect.

The other class of corporations are those authorized to do business in the state, of which this defendant is one. A very long, complete and complex system of regulation is provided with many penalties for its infraction.

To the first class belong the oil companies, the mercantile, the grain companies, cotton brokers, and the thousand and one forms to which modern commercial life lends itself, the most of whom are incorporated. Formerly, the remedy by attachment was used with a posted or printed notice of the suit, which the defendant was very unlikely to see. To meet this condition and to prevent the frequent injustices and, oppressions which are so likely to occur, these statutes were enacted, and the clerk was required to mail a copy to the defendants to give effectual notice.

The statutes are wholly admirable and fair, when confined to their proper scope. To attempt to extend these sections to the excepted classes of corporations, these mentioned in section 3932 is to do violence to the general rule of law in this regard, to the consistent policy of the state as expressed in numerous decisions of this court, and to the general acquiescence of the bench and bar in its correctness. Again as in our main brief, we respectfully call the court's attention to the

fact that sections 919 and 920 were new sections, inserted in the Code by the commissioners, who were Judge Whitfield, T. C. Catchings and Judge Hardy. That Judge Whitfield should have been an active or passive agent in an amendment that overthrew the entire body of laws and decisions, that constituted section 3932, is most unreasonable; that he should have been ignorant of the effect of the amendment is more unreasonable still. The truth is, that these amendments made no changes in the law whatever, except to make more emphatic the mode of obtaining judgment against corporations "found doing business in the state." *The Saxony Mills Case,* 94 Miss. 236, with its quotations from Judge WHITFIELD in the *Sanford Case,* 75 Miss. 862, makes this plain. The *Brand Case,* 115 Miss. 625, is no authority to the contrary. It has long been the law in this state that service on a travelling salesman or solicitor is not valid. The decision is a correct interpretation of the Law. Nor is *The Eminent Household of Columbian Woodmen* v. *Lindy,* 110 Miss. 881, any authority for reversing this case. Before it could be applicable, the court would have to take judicial knowledge that it was an insurance company, and that it was also a foreign insurance company; there is no mention of these facts in the record. The case of *Tutwiler* v. *Gallatin,* 117 Miss. 879, seems to me not to be in point in any wise. To give this decision, *Woodmen* v. *Liundy,* any such effect as contended for would require the implied repeal of sections 3932, 600, 708, 709 and 2672 of the Code of 1906, as implied repeal is distinctly not favored by any court. Thus the effort must fail. See the authorities in our original brief on this point.

*Rowan* v. *Decell,* 83 Miss. 271, throws no light on the subject. The board sues in a purely representative capacity for the district who will receive the money; as the board exercises the authority of the county, as is said in *Jeff Davis County* v. *Lumber Co.,* 94 Miss. 536,

an acquittance by the county will fully protect the surety company. Besides, as they pay by check and voucher, the surety company will fully protect itself.

In the Rowan case, he might have owed either of two parties and an acquittance from one would not have discharged him from the other; the bill was sent back to be reformed.

There is no similarity in the two cases whatever. Nobody disputes, least of all the counsel for the appellees, that you can obtain no relief on a bill, despite your decree *pro confesso,* unless the bill shows grounds for relief, when it is heard finally on bill and decree *pro confesso.* This is Horn-book law and necessitates no citations of authorities, as does counsel for the appellant. With a misnomer clearly shown, will counsel contend that the bill and exhibits show no ground for relief?

In *Spears* v. *Cheatam,* 44 Miss. 71, cited by counsel, it is held that the effect of a decree *pro confesso* is the same as if a sworn answer had been interposed, and the answer had been overcome by proof. In *George* v. *Solomon,* 71 Miss. 168, upon which counsel comment, it seems to us to have totally mistaken the case. The court says of the bill in the case that it was a pure and simple fishing bill and angled in the broadest water. Our bill certainly isn't that. This was a mistaken proceeding altogether and is not authority for anything except that a decree *pro confesso* does not entitle to relief, unless the bill shows grounds therefor, a correct proposition entirely.

Again, counsel says that "it is true that where the defendant does not make objection to the character in which plaintiff sues or that he sues by a wrong name by plea in abatement or demurrer, and defendant pleads to the merits, that is a waived under the authorities of the character in which plaintiff sues; but these cases have no application to the case at bar." The reservation by counsel "and defendant pleads to the merits," entire-

ly destroys the force of the rule as stated by him, and is entirely without authority of law. .

The reverse of the rule, as stated, is the law; the defendant is required to appear and plead at the apearance terms or he is conclusively held to have waived his objection, and cannot urge it here. See, the authorities on this point on the first and second page of our brief and also *Bolding* v. *R. R. Co.* 69 Miss. 236; *Fly et al.* v. *King,* 71 Miss. 539.

We see nothing whatever in Messrs. Green & Green's brief to alter our belief that the suggestion of error should be sustained, and the case be affirmed.

HOLDEN, J., delivered the opinion of the court.

It is urged that we erred in our decision of this case, *National Surety Co.* v. *Board of Supervisors of Holmes County,* 81 So. 792. It will be observed from our previour opinion that we held that the board of supervisors had no authority to sue in its own name for the benefit of the county or any part of it, but that such suits must be instituted in the name of the county. The position taken and urged now by the appellee is that our holding is unsound for the reason that the suit in the name of the board for the benefit of the county was merely a misnomer which should have been objected to and taken advantage of by the defendant in the lower court; and the failure to object then, so that proper amendment could be made, amounts to a waiver and precludes the appellant from raising the point on appeal, because the real party complainant, the county, was in court though not named as complainant in the pleading.

After due consideration of the suggestion, we must confess the contention of appellee is right, and our former opinion to that extent is withdrawn and annulled. This conclusion is supported by the following authorities: *Anthony et al., Commissioners,* v. *Bank of Com-*

*merce,* 97 U. S. 374, 24 L. Ed. 1060; 30 Cyc. 28, note; 15 C. J. section 379, pp. 665, 666; 15 Ency. Pl. & Pr. 475; *Fountain* v. *County of Pitt,* 171 N. C. 113, 87 S. E. 990; *Union Pacific Railroad* v. *Saline County,* 69 Kan. 278, 76 Pac. 865; Code of 1906, section 775; Hemingway's Code, section 558; *Porter et al.* v. *Cresson et al.,* 10 Serg. & R. (Pa.) 257; Andrew Stephens on Pleading, section 200.

But the decree of the lower court must be reversed upon another ground presented by the appellant which we deemed unnecessary to pass upon in our former opinion; that is, that no process was served on the defendant below. The return on the summons reads as follows:

"Executed personally by delivering to Edgar Mayfield, agent of and for the National Surety Company, a corporation of the state of New York, a true copy of this writ July 3, 1918, and after diligent search and inquiry failed to find the Burton Construction Company and W. F. Allen in this county this July 3, 1918. G. S. Beall, Jr., Sheriff, by J. C. Reed, D. S."

It is contended by the appellant that it was not served with process as required by section 920, Code of 1906 (section 4094, Hemingway's Code), in that the return does not sufficiently show the kind of service obtained under said section, nor does the record show that the appellant foreign corporation was mailed a copy of the process as required by the statute. And it is true the record does not show a compliance with the statute in some respects. But the appellee, in answer to this contention, makes the point that it was not necessary to obtain service upon the defendant foreign corporation in the manner provided by said section 920, Code of 1906 (section 4095, Hemingway's Code), because section 937 of the same chapter, Code of 1906 (section 4115, Hemingway's Code), provides that the provisions of the chapter shall not apply where the subject-matter is else-

where prescribed, viz., that under section 2562, Code of 1906 (section 5072, Hemingway's Code), the appellant surety company is declared to be an insurance company; and that by the fourth clause of section 2606 of the same chapter, Code of 1906 (section 5069, Hemingway's Code), it appears that service may be obtained upon the agent of such insurance company.

However, it seems clear to us that the appellant surety company is declared by statute to be a foreign insurance company which is required to appoint an agent in the state to receive and acknowledge service of process for and on behalf of the company, and that process by the complainant below could only be served upon the designated agent of the foreign insurance company. This is the authorized way of bringing the foreign insurance company into court. It nowhere appears in this record that service was had upon any person appointed and designated at such agent, nor does it appear that any such person was appointed by the appellant insurance company. Section 2606, Code of 1906 (section 5069, Hemingway's Code). Therefore it follows that no legal service compelling the appearance of the appellant was obtained in this case, and consequently the decree *pro confesso* was error.

We are much inclined to believe, though we do not decide, that the service of process even under said section 920, Code of 1906 (section 4094, Hemingway's Code), was insufficient in this case to support a decree *pro confesso*. But certainly this record does not show that the appellant foreign insurance company appointed the said Mayfield, who was served, its agent under the provisions of the said secion 2606, Code of 1906 (section 5069, Hemingway's Code), and of course we cannot take judicial notice of any such appointment, if any there was. Proof must be made of the appointment of the agent to receive process and that the process was served

upon this identical agent. *Globe Ins. Co.* v. *Sayle,* 107 Miss. 169, 65 So. 125.

For the reasons enumerated above, the suggestion of error is sustained in part and overruled in part; the judgment rendered here dismissing the complainant's bill is set aside and annulled; and the decree of the lower court is reversed and the cause remanded.

*Reversed and remanded.*