## RAWLINGS v. AMERICAN OIL CO.

(Division B.   June 10, 1935.)

. [161 So. 851.   No. 31777.]

684

White & Morse, of Gulfport, **Roberson & Cook**, of Clarksdale, and **Lotterhos & Travis**, of Jackson, for appellant.

**Hannah & Simrall,** of Hattiesburg, and **Welch & Cooper,** of Laurel, for appellee.

Argued orally by **Sam Cook**, for appellant, and by **T. C. Hannah**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

This is an appeal by Rawlings, as receiver of the Commercial National Bank of Hattiesburg and the First National Bank of Gulfport, from a judgment sustaining a writ of garnishment issued against such receiver on a judgment in favor of the American Oil Company against E. E. Lovell, principal, and the New York Indemnity Company, as surety on his bond as road contractor.

The receiver made a motion to quash the writ, claiming that the judgment upon which it was rendered was void. The two principal grounds of the motion were: (1) The declaration upon which the judgment was rendered failed to allege that the insurance commissioner of the state had been appointed its process agent by the New York Indemnity Company, and the absence of proof of such fact in the record; and (2) when the judgment was rendered against the New York Indemnity Company, a New York corporation, the courts of that state had declared it insolvent and placed its affairs in the hands of a receiver for liquidation, therefore it was dead and could not be sued. The motion was overruled. The receiver then answered the writ, setting up, in substance, that the funds in his hands as receiver of the Commercial National Bank of Hattiesburg belonged

to him as receiver of the First National Bank of Gulfport; that, at the time the Union Indemnity Company went into receivership, the funds belonged to that company, and the right to them was purchased by him as receiver of the Gulfport bank from such receiver, and were not therefore subject to garnishment. The cause was tried on the pleadings and agreed facts.

The New York Indemnity Company and the Union Indemnity Company were both engaged in business in this state; the former being a New York corporation, and the latter a Louisiana corporation. Their principal, if not exclusive, business was suretyship on what are commonly known as indemnity bonds.

In April, 1930, these two companies entered into what is denominated in the record as a "Treaty of Insurance" with the International Reinsurance Corporation. By this contract the reinsurer agreed to contribute a certain proportion of the liabilities incurred and paid by the New York and Louisiana companies on their bonds. On January 3, 1931, the New York company executed and delivered its surety bond in favor of Forrest county to indemnify the county against loss in the event of the failure of the Commercial National Bank of Hattiesburg, the county depository; the amount of the bond was one hundred thousand dollars. On the same day it executed a like bond in favor of the city of Hattiesburg to indemnify it against loss on account of the failure of the Commercial National Bank, the city depository. On February 20, 1931, the New York company executed a surety bond for E. E. Lovell in the sum of thirty-two thousand five hundred dollars, insuring the performance of Lovell's contract with the state highway commission for certain road construction. The bond contained the usual condition in favor of the county, and also in favor of those furnishing Lovell with materials going into the road construction. The American Oil Company furnished materials which went into

the road construction for which Lovell failed to make payment. This claim was the basis of the judgment on which the garnishment was issued.

A contract of reinsurance dated May 22, 1931, but effective May 31, 1931, was entered into between the Louisiana company and the New York company. It provided, in substance, that the Louisiana company should assume all liabilities of the New York company under any policy, bond, or other obligation which the New York company had issued or might thereafter issue, and that any policyholder of the New York company or claimant thereunder might institute suit directly against the Louisiana company as if the latter had issued the contract in the first instance; that the New York company should turn over to the Louisiana company all its files, contracts, records, and other documents relating to its business and bonds, and that the Louisiana company should take the place in every respect of the New York company with all its rights and obligations, including that of subrogation. By the contract the Louisiana company was appointed the attorney in fact of the New York company, with the right to sue either in its own name or that of the New York company.

On June 1, 1931, the Commercial National Bank of Hattiesburg, being insolvent, was placed in receivership. In the same month Forrest county and the city of Hattiesburg called on the New York company to pay the amounts of their respective deposits in the Commercial National Bank in accordance with its bonds. The county had on deposit two hundred forty-seven thousand one hundred sixty-four dollars and three cents and the city had one hundred two thousand one hundred forty dollars and fourteen cents. On July 21, 1931, the Louisiana company, in accordance with its contract with the New York company, paid the city of Hattiesburg the amount of its deposit, and on August 6, 1931, it paid Forrest county ninety-nine thousand three hundred

twenty-five dollars and forty-three cents, the balance remaining due of its deposit. The receiver's certificates representing the amounts of those deposits were thereupon assigned by Forrest county and the city of Hattiesburg to the New York company and delivered to its agent, the Louisiana company. Thereafter the International Reinsurance Corporation paid the Louisiana company on account of certain claims the sum of one hundred forty-nine thousand nine hundred ninety-four dollars and eighty-eight cents. This payment was made by virtue of the contract of reinsurance between the International company and the New York and Louisiana companies.

In April, 1932, the Louisiana company, acting for and on behalf of the New York company, brought suit in the District Court of the United States at Biloxi against the receiver of the Commercial National Bank of Hattiesburg and procured a final decree, which provided, among other things, that the receiver should recognize the New York company as creditor and pay all dividends in his hands on the deposits of Forrest county and the city of Hattiesburg to it. In January, 1933, the Louisiana company, being insolvent, was taken over by receivers appointed by the district court of the parish of Orleans, La. Beckner and Levy were appointed receivers. Later in the month Robert Gandy was appointed by the chancery court of Hinds county, in this state, as ancillary receiver of the Louisiana company for the state of Mississippi.

On March 3, 1933, the judgment in favor of the American Oil Company against Lovell and his surety was rendered. It was a judgment by default. A court of competent jurisdiction of the state of New York had dissolved the New York company and turned its affairs over to receivers for liquidation. There was no ancillary receivership of the New York company in this state. The declaration filed by the American Oil Company

against Lovell and his surety set out that the New York company was qualified to do business in this state and "subject to the process of this court by service of summons on Geo. D. Riley, the State Insurance Commissioner, at Jackson, Hinds County, Mississippi." Process was issued and served more than thirty days before the judgment was rendered; it was served on George D. Riley, insurance commissioner, as process agent of the New York company. Both defendants failing to appear, judgment by default was taken. The judgment recites: "It appearing to the court that defendants were duly and legally served with personal process more than thirty days before return day and have made no defense to said suit, but made default altogether." Both the judgment and the record in the case were silent as to whether, when default judgment was rendered, the court had before it a certified copy of the appointment by the New York company of the insurance commissioner as its process agent.

The third paragraph of section 5165, Code 1930, is in this language:

"It shall, by a duly executed instrument filed in his office, constitute and appoint the commissioner of insurance, and his successor, its true and lawful attorney, upon whom all process in any action or legal proceeding against it may be served, and therein shall agree that any process against it which may be served upon its said attorney shall be of the same force and validity as if served on the company, and the authority thereof shall continue in force irrevocable so long as any liability of the company remains outstanding in this state. The service of such process shall be made by leaving a copy of the same in the hands or office of the said commissioner. Copies of such instrument certified by the said commissioner shall be deemed sufficient evidence thereof, and service upon such attorney shall be deemed sufficient service upon the principal."

If required, which we do not decide, that the declaration set out the appointment by the New York company of the insurance commissioner as its process agent, we think that fact is sufficiently alleged. Does the absence of a recital of that fact in the judgment, and of proof in the record of such fact, render the judgment void? The solution of that question depends on whether this proceeding is a collateral attack on the judgment or a direct attack. The authorities appear to be practically one way in holding that a proceeding to enforce a judgment is collateral to the judgment, and therefore the judgment itself cannot be attacked in such a proceeding except for fraud in its procurement or voidness on its face. 34 C. J. 522, sec. 828; McIntosh v. Munson Road Machinery Co., 167 Miss. 546, 145 So. 731; Cotton v. Harlan, 124 Miss. 691, 87 So. 152. In the latter case the court held that in a collateral attack, unless the contrary affirmatively appeared from the record, all jurisdictional facts were conclusively presumed to have existed, whether there were recitals in the record to show them or not. We have here a collateral attack and a recital in the judgment of personal service on both of the defendants, and, in addition, the return on the process in the record showing such service on the insurance commissioner as the process agent for the New York company. It is conclusively presumed that the court had before it the necessary proof of the fact of the due appointment of such process agent. These decisions are not in conflict with Meyer Bros. v. Whitehead, 62 Miss. 387, wherein the decision was based on section 1533, Code of 1880, which provided that the return of the officer serving any process might, in the same action, be shown to be untrue by either of the parties. The court held that the statute could be invoked at a subsequent term of the court at which the judgment was rendered.

The receiver relies on Watkins Machine & Foundry Co. v. Cincinnati Rubber Co., 96 Miss. 610, 52 So. 629;

Continental Casualty Co. v. Gilmer, 146 Miss. 22, 111 So. 741; National Surety Co. v. Board of Supervisors, 120 Miss. 706, 83 So. 8; Globe Rutgers Fire Ins. Co. v. Sayle, 107 Miss. 169, 65 So. 125; Masonite Corporation v. Burnham, 164 Miss. 840, 146 So. 292, 91 A. L. R. 752; Universal Life Ins. Co. v. Catchings, 169 Miss. 26, 152 So. 817. None of those cases are in point. The attack on the judgment in all of them was a direct attack made on appeal.

Was the judgment void because, when rendered, the New York company had been dissolved and was in the hands of receivers? Appellant relies on the common-law principle that the dissolution of a corporation meant its death; it could neither sue nor be sued. Torry v. Robertson, 24 Miss. 192. The trouble about that position is that the common-law rule has been changed by section 4171, Code 1930, which provides that, if the charter of a corporation has expired or been annulled, it may nevertheless be continued as a body corporate for the term of three years thereafter, for the purpose of suing and being sued and of enabling it to close up its affairs, to sell and convey property, and to divide its assets. The statute applies to foreign corporations doing business in this state, as well as domestic corporations. Universal Life Ins. Co. v. Catchings, supra. Of course, only the assets of a foreign corporation located in this state could be affected. Section 4166, Code 1930, subjects foreign corporations doing business in this state to suits here. Authorities are ample to support the position that a foreign corporation dissolved and dead in the domicile of its origin may be deemed alive in a foreign state, so far as to afford remedies to its own citizens against property within its own jurisdiction. Scammon v. Metropolitan Trust Co., 148 N. Y. 34, 42 N. E. 515; Hammond v. National Life Ass'n, 58 App. Div. 453, 69 N. Y. S. 585; Fred S. James & Co. v. Second Russian Ins. Co., 208 App. Div. 141, 203 N. Y. S. 232, 233;

Clark v. Williard, 292 U. S. 112, 54 S. Ct. 615, 78 L. Ed. 1160.

We come now to the question of whether the salvage in the hands of the receiver of the Commercial National Bank was subject to the garnishment. The solution of that question turns on whether it belonged to the New York company or to the Louisiana company. When the Louisiana company discharged the liability of the bank to Forrest county and the city of Hattiesburg, either it or the New York company was subrogated to the rights of the county and the city against the bank. Although the Louisiana company discharged the entire liability out of its own funds, it had the county and the city to assign their rights against the bank to the New York company. Later, the International Reinsurance Corporation paid over to the Louisiana company approximately one hundred fifty thousand dollars, under its contract with the New York company and the Louisiana company to reimburse them to a certain extent for losses they might incur. When the Louisiana company procured the decree of the federal court in 1932 against the receiver, establishing the fact that the New York company was entitled to the salvage in the hands of the receiver by subrogation to the rights of the county and the city, both the New York company and the Louisiana company were going concerns. It is reasonable to assume that there must have been some settlement between the two companies of their affairs which entitled the New York company to this salvage. The decree adjudicated this question; the Louisiana company asserted that to be a fact in its pleading, and the court so adjudged. The Louisiana company, and those claiming under it, are now estopped to assert otherwise. Judgments are conclusive evidence against both parties and privies. Lipscomb v. Postell, 38 Miss. 476, 477, 77 Am. Dec. 651; 34 C. J. 1009, sec. 1431.

The Mississippi receivers of the Louisiana company,

of course, had no greater right in these funds than the company itself, and that is true of Rawlings as receiver of the First National Bank of Gulfport, who purchased from the receiver of the Louisiana company.

Finally, the receiver contends that these funds were not subject to the writ of garnishment. U. S. Revised Statutes, sec. 5236, USCA, tit. 12, sec. 194, provides, among other things, that the Comptroller in administering the affairs of insolvent national banks shall make ratable dividends of the moneys paid over to him by the receivers "on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction." The language "adjudicated in a court of competent jurisdiction" is not confined to the courts of the United States; it applies as well to the state courts. Earle, Receiver, v. Pennsylvania, 178 U. S. 449, 20 S. Ct. 915, 44 L. Ed. 1147.

The judgment rendered is not a money judgment in the ordinary sense; it does not provide for execution; it establishes the claim of the American Oil Company in the matter of the receivership and fixes the amount to be paid by the receiver. We see no reason why the judgment should be amended in any respect.

Affirmed.