## Polk v. Illinois Central Railroad Company.

(Decided May 25, 1917.)

### Appeal from McCracken Circuit Court.

1. **Waters and Water Courses—Injuries by Flowage—Railroad Embankments.**—If reasonable care and foresight have been exercised in constructing a railroad, the railroad company cannot be held liable because its structures have contributed to causing the overflow of riparian lands at a time of extraordinary and unprecedented floods; but if there was negligence in the construction of the bridge, embankment, or other work, which contributed to the injury, it is no defense that the flood was unexampled or overwhelming.

2. **Torts — Independent Wrongdoers — Liability.**— If the separate wrongful acts of two or more persons acting independently, without concert, plan, or agreement, unite to cause injury to another, such persons are not joint wrongdoers within the meaning of the law, and each is liable to the injured party for only so much of the injury as is chargeable to his own separate individual act.

3. **Torts—Independent Wrongdoers.**—The fact that it may be difficult to actually measure the damage caused by the wrongful act of each contributor to the aggregate result, does not affect the rule that if the persons who maintain a nuisance act independently and not in concert with others each is liable for damages

which result from his individual conduct only, and does not make any one liable for the acts of the others.

MILLER & MILLER for appellant.

WHEELER & HUGHES, R. O. FLETCHER and TRABUE DOOLAN & COX for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The lands of the appellant, Mrs. Polk, lie on each side of the west fork of Island creek, in McCracken county. About 200 yards below her land the Illinois Central Railroad crosses Island creek, on a trestle. A narrow strip of land belonging to Jones lies between the trestle and the land of Mrs. Polk. The land of G. T. Moss is also situated on Island creek, above Mrs. Polk's land.

Mrs. Polk and Moss brought separate actions against the Illinois Central Railroad Company for the destruction of their crops in 1914, by the negligence of the railroad company in permitting the drift and *debris* in the creek to accumulate on its right of way and against the railroad trestle, to such an extent as to dam up the water and thereby flood their lands.

The two cases were heard before the same jury, and upon the same proof; and the jury having found a verdict for the company in each case, Mrs. Polk prosecutes this appeal. Moss has not appealed.

There is no contention that the bridge or trestle was defectively constructed; on the contrary, the claim of the plaintiff is rested entirely upon the alleged negligence of the company in permitting the drift and *debris* in the creek to accumulate on its right of way and thereby obstruct the culverts under the trestle. The request for a reversal is based upon the alleged error of the trial court in instructing the jury.

The rule of law applicable to cases of this character is stated in 40 Cyc. 575, as follows:

"If reasonable care and foresight have been exercised in constructing a railroad, the railroad company cannot be held liable because its structures have contributed to causing the overflowing of riparian lands at a time of extraordinary and unprecedented floods; but if there was negligence in the construction of the bridge, embankment, or other work, which contributed to the injury, it is no defense that the flood was unexampled or overwhelming."

By the first instruction the court advised the jury that if the railroad company's negligence permitted the culvert or opening under its trestle to become so filled with dirt, sand, brush, or other obstructions, as to render it inadequate to carry off the water that accumulated upon plaintiff's land from the usual and ordinary floods or rainfalls in that vicinity, and that the water from such usual and ordinary rainfalls was thereby caused to overflow the plaintiff's land in unusual volume or quantity, thereby injuring or destroying the growing crops of the plaintiff, the law was for the plaintiff and the jury should so find.

This instruction is criticised because it required the water from the usual and ordinary rainfalls to overflow the plaintiff's land in "unusual volume or quantity" before she could recover. It is insisted that the plaintiff was entitled to recover in case her lands were overflowed by the usual and ordinary floods or rainfalls, if their flow was interrupted by the defendant's negligently permitting its culvert to be obstructed, and that the court improperly predicated plaintiff's right to recover upon the accumulation of an unusual volume or quantity of water.

The instruction would have been better if the qualification involved in the expression "unusual volume or quantity" had been omitted; but, in view of the fact that the expression was qualified so as to permit a recovery in case the plaintiff's crops were damaged by the overflow, it is apparent that the jury could not have been misled in applying the instruction as a whole. The plaintiff's right to recover depending upon the company's negligently permitting its culvert to become obstructed, to the injury of plaintiff, it is apparent that any injurious accumulation of water from the ordinary and usual rains would, by reason of the obstruction, be of unusual volume or quantity.

There is some evidence to the effect that Jones had permitted logs and drift to accumulate on his intervening land, and that this accumulation of obstructions contributed to the overflow of Mrs. Polk's land, and the consequent destruction of her crops. Under this proof the court, by its second instruction, advised the jury that if it should believe from the evidence that the overflow to plaintiff's land was caused by extraordinary rains or floods that could not have been anticipated by persons of ordinary experience and prudence, they should find for the defendant; and, further, that if any part of the over-

flow and injury to plaintiff's crops resulted from any other cause than the inadequacy of the culvert under defendant's trestle, and by reason of the obstructions mentioned in the evidence, the plaintiff could not recover for any injury to her crops, "so caused."

The criticism of this instruction is that the expression "so caused" might equally have referred to the obstructions caused or permitted by the railroad company, or to the obstructions caused by Jones; and, for that reason, they might have believed they would not be justified in finding a verdict against the company for any amount in case any part of the damage was caused by the Jones obstructions.

But from a careful reading of the second instruction, it is plain that the court therein said, in substance, that if the Jones obstructions contributed to the damage, the company would not be liable for Jones' part of the damage, although it would be liable for the damage caused by the obstructions of its own culvert; and this we understand is the law in such cases.

In 38 Cyc. 484 it is said:

"As applicable to the entire range of tort actions, the proposition may be stated that where wrongdoers have not acted in concert, and separate and distinct injuries are caused by the act or neglect of each, the liability is several only. Thus where animals belonging to several owners do damage together, their being a separate trespass or wrong, each owner is generally liable separately only for the injury done by his animal. The fact that it is difficult to separate the injury done by each from that done by the others furnishes no reason for holding that one tort-feasor should be liable for the acts of others with whom he is not acting in concert. Furthermore, if defendant's act was several when it was committed, it can not be made joint because of a consequence which followed in connection with the result of the same or a similar act done by others."

Or, to state the rule more briefly, if the separate wrongful acts of two or more persons acting independently, without concert, plan, or agreement, unite to cause injury to another, such persons are not joint wrongdoers within the meaning of the law, and each is liable to the injured party for only so much of the injury as is chargeable to his own separate individual act. Bonte v. Postel, 109 Ky. 64, 51 L. R. A. 187; Chapman v. Palmer, 77 N. Y. 51, 33 Am. Rep. 566; Sparkman v. Swift, 81 Ala. 231;

DeDonato v. Morrison, 160 Mo. 581; Little Schuylkill Nav. R. & Coal Co. v. Richards, 57 Pa. 142, 98 Am. Dec. 209; Wiest v. Electric Traction Co., 200 Pa. 148, 58 L. R. A. 666; Lull v. Fox & W. Imp. Co., 19 Wis. 101; Sloggy v. Dilworth, 38 Minn. 179, 8 Am. St. Rep. 656; Miller v. Highland Ditch Co., 87 Cal. 430, 22 Am. St. Rep. 354; Sellik v. Hall, 47 Conn. 273; Evans v. W. & W. R. Co., 96 N. C. 45; William Tackaberry Co. v. Sioux City Service Co., 154 Iowa 358, 40 L. R. A. (N. S.) 113, Ann. Cas. 1914A 1276. It is believed that the case of Day v. Louisville Coal & Coke Co., 60 W. Va. 27, 10 L. R. A. (N. S.) 167, holding a contrary doctrine, stands alone.

Appellant, however, insists that this is a case where Jones and the railroad company were joint tort-feasors in the same act, and that they are jointly and severally liable for the whole damage under the authority of Pugh v. Chesapeake & Ohio Ry. Co., 101 Ky. 77, and the long line of cases to the same effect.

There can be no criticism of the abstract rule contended for by appellant. We fail to see, however, how it can be made applicable to this case, where separate and distinct injuries are caused by wrongdoers who have not acted in concert. In the case at bar, Jones and the company each obstructed the flow of the water—Jones upon his own land and the company upon its right of way—and the fact that it is difficult to separate injury done by each from that done by the other, furnishes no reason, under the authorities, for holding that the company should be liable for the tort of Jones, with whom it was in no way concerting. The company's act being several when it was committed, it cannot be made joint because of a consequence which followed in connection with the result of the same or a similar act done by Jones. Butler v. Ashworth, 110 Cal. 614.

The same principle is applied where different parties discharge sewage and filth into a stream which intermingle and cause an actionable nuisance. In cases of that class, the different parties are not jointly liable for damages where there is no common design or concert of action, but each is liable only for his proportion of the damages.

In 2 Jaggard on Torts, 797, it is said:

"But the liability of joint contributors is not necessarily that of joint tort-feasors. If the persons who maintain a nuisance act independently, and not in concert with others, each is liable for damages which result from

his individual conduct only. And the fact that it may be difficult to actually measure the damage caused by the wrongful act of each contributor to the aggregate result does not affect the rule, or make any one liable for the acts of the others.''

The rule upon this subject was well stated in Little Schuylkill Nav. R. & Coal Co. v. Richards, 57 Pa. 142, 98 Am. Dec. 209, which was an action for damages caused by independent companies dumping refuse into a river.

The court there said:

''The right of action arises upon the act of throwing the dirt into the stream—this is the tort, while the deposit below is only a consequence. The liability, therefore, began above with the defendant's act upon his own land, and this act was wholly separate, and independent of all concert with others. His tort was several when it was committed, and it is difficult to see how it afterwards became joint, because its consequences united with other consequences. . . . Without concert of action no joint suit could be brought against the owners of all the collieries.''

Cooley on Torts, 3rd ed. 244, and Gould on the Law of Waters, section 222, are to the same effect.

The second instruction complied with this rule.

Judgment affirmed.