## Louisville & Nashville R. Co. v. Middleton et al.

(Decided Oct. 18, 1935.)

ASHBY M. WARREN and LOW & BRYANT for Louisville & N. R. Co.

G. B. BRUNER and J. C. BAKER for Middleton.

ELMON MIDDLETON, Co. Atty., for Harlan County.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Harlan circuit court based on the verdict of the jury in an ac-

tion wherein the appellee, Tom Middleton, claimed damages to two lots owned by him in Pansy subdivision, located in Harlan county, as a result of water, together with sediment and debris, cast on his property through a culvert constructed under the railroad right of way. Harlan county was brought into the action by a cross-petition of the railroad company wherein it asked that any damages adjudged against it should be recovered by it against Harlan county. The verdict of the jury, however, exonerated Harlan county, and a judgment was rendered alone against the railroad company. The right of way of the railroad runs along the northern end of the two lots involved, and is on higher ground. On the date when the right of way was acquired by the railroad, in 1927, and for many years prior thereto, a public road was located on and along the southern side of the right of way, crossing the railroad tracks toward the north at a point several hundred feet east of the lots in question, and running thence along and off the right of way and on toward higher ground in an easterly direction. At a point about 200 feet east of Middleton's property there is a culvert running under the highway, which is connected to a culvert under the railroad tracks that drains the water accumulating in a ditch on the northern side of the right of way east of the culvert. The highway culvert was connected to the culvert under the railroad tracks many years ago, although it has been replaced by a longer and larger culvert within the last five years without any change having been made during all of this period to the culvert beneath the tracks. About 300 feet east of this culvert and beyond the grade crossing, there is another culvert under the tracks which drains the water in a ditch north of the tracks and between it and the highway. Up until about five years ago there was a corresponding culvert under the highway at this point. However, about five years ago the grade of the highway was raised, and this latter culvert was closed up, with the result that water formerly passing under the highway at this point now runs along the north side of the highway and the railroad tracks, coming out through the culvert nearest to Middleton's property and thus increasing the flow at that point.

Both Middleton and the railroad company claim title to their respective properties from a common source. In May, 1918, W. H. H. Smith conveyed

the right of way in question to the Kentenia-Catron Corporation for the purpose of constructing a railroad thereon, and it was provided that the consideration in the deed "covers all damages of every character whatsoever and wherever and whenever caused, or that may be caused to the remaining lands of the parties of the first part (W. H. H. Smith) by or incident to the prudent and careful construction, maintenance and operation of a railroad upon the land herein conveyed, or the use to which it may be put by the party of the second part, and that this agreement shall be a covenant running with the land and binding on the parties of the first part, their heirs and assigns forever." The railroad company acquired the right of way from the Kentenia-Catron Corporation in December, 1927. In June, 1918, W. H. H. Smith conveyed the property now owned by Middleton to the Black Eagle Coal Corporation, which in turn conveyed it to Middleton by deed dated July 15, 1925. It is not disputed that Middleton is bound by the covenant quoted above. The contention on behalf of Middleton is thus stated in his brief:

"The original construction apparently conformed with the demands of prudent and careful construction, and there is no controversy relative to that feature, however the vital question arises as to the maintenance, operation and the use to which it was put, that is in permitting Harlan County the right or license to connect its culvert to that of the appellant and extending the same to within a few feet of the property of the appellee Middleton and discharging surface water directly upon his premises."

It will be observed at once that the verdict of the jury, exonerating Harlan county and holding the railroad company, is in direct conflict with the theory of appellee. The verdict could not stand even if appellee's theory of the case were sound law. If the railroad company was responsible for the acts of the county, certainly the county itself was responsible.

It is argued on behalf of appellee that the county was simply a licensee on the right of way, and that it was the duty of the railroad company to prevent it from so constructing its drains as to bring about the condition complained of. The evidence establishes without contradiction that the highway was located at the same place when the right of way was purchased by the rail-

road company and had been there for probably fifty years prior thereto. The railroad claims that it has no right to require the removal of the highway, and the evidence bears out its statement in this connection. Clearly it could not control the method of construction followed in rebuilding the highway. The cases relied on by Middleton wherein a lessor railroad has been held liable for damages resulting from the acts of its lessee, obviously involve a different principle from the question here presented, and are not in point. The argument that title to the highway could not be acquired against the railroad company by adverse possession overlooks the fact that title had long been acquired before the railroad company took over the right of way. Of course, the railroad company would be liable for any damages suffered by Middleton for which it was individually responsible, and from which it had not been released by the covenant in the deed from W. H. H. Smith to the Kentenia-Catron Corporation, but it is clearly not responsible for the acts of persons over whom it has no control. Watson v. Pyramid Oil Co., 198 Ky. 135, 248 S. W. 227; Polk v. Illinois Central Railroad Co., 175 Ky. 762, 195 S. W. 129

The proof in this case clearly establishes that there has been no change by the railroad company in any of its structures during the entire period of which Middleton complains. The new culvert of which appellee complains was simply fastened where the old one had been. Any changes that have occurred have resulted from the acts of persons other than the railroad company with whom it had no agreement, and over whom it had no power of restraint. The trial court should have sustained appellant's motion for a peremptory instruction.

The appeal is granted, and the judgment reversed.