# Chesapeake & O. Ry. Co. v. Saulsberry et al.

(Decided Dec. 20, 1935.)

HUNT & BUSH, RUFUS LISLE and JOHN M. THEOBALD for appellant.

DYSARD & TINSLEY for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellee recovered judgment for $500 against the appellant for damages to their buildings and land by the flooding and overflowing of Little Sinking creek caused, as it is alleged, by the negligent omission of the railroad company to keep open the space or aperture under its bridge through which the creek ran. The preponderant and better evidence is that on the two occasions involved, one in July, 1932, and the other in July, 1933, there were extraordinary and unprecedented rainfalls at and above the place and such unexpected deluge that the railroad company could not be held responsible for the resulting conditions. But there was substantial evidence that although the rains were heavy, they were not greater than had been experienced many times, and such as were reasonably to be expected. Of like character is the evidence pertaining to the size of the space under the bridge; the plaintiff showing that during the preceding five years, 75 per cent. of one side had become closed and 40 per cent. of the other, and the defendant showing that there had been no substantial filling up. Because of the conflict, the judgment must be viewed as though the evidence of the plaintiff established the facts rather than that of the defendant.

The double-track railroad bridge was erected about 1907. There was a center pier near the middle of the bed of the stream, but it appears that in normal times the pier was outside of the water on its west bank. The space between the east abutment and the east side of the pier, through which the creek ordinarily flowed, is 36 feet. The space between the west abutment and the west side of the pier is 39 feet. The basis of the action as stated in the petition is:

"Plaintiffs say that within the five years last past, the defendant has wrongfully, carelessly, negligently, and unlawfully, permitted drift, earth, rock, sand, and debris to collect in said creek and within aperture provided by it under said bridge for the passage of water, and by reason thereof the flow of the water in said creek has been retarded and held back, silt, earth, rock and other debris has been allowed to collect in said creek under and above said bridge, and has caused the channel and bed of said creek to fill up and has rendered said

creek insufficient to carry the water draining therein, and has caused said creek to overflow and leave its channel and bed to overflow, stand over and on plaintiffs' said land, to wash and carry away the soil thereof and to deposit debris thereon, and to wash and carry away buildings and other improvements thereon, all to plaintiffs' damage in the sum of Three Thousand ($3,000) Dollars, no part of which has been paid.''

The evidence of the plaintiff is that the bed of the stream under the bridge had filled gradually with a natural accumulation of sediment and perhaps some light refuse from nearby mines. Thus the case as presented for determination is whether the railroad company under such circumstances is liable as a matter of law for not having kept the openings sufficiently large for the free passage of water from ordinarily heavy rains. Not controlling are the cases where the structures erected were themselves insufficient or constituted partial barriers, nor those where there were unnatural obstructions or interferences caused by the negligent failure to remove drift or other debris recently collected at the mouth or in or against the structure.

The appellant maintains that the petition did not state a cause of action. The sufficiency of the evidence was also tested by motions for a directed verdict. Both contentions rest upon the same conditions, for the pleading and proof are substantially alike.

There is no charge of negligent construction of the bridge, but of course negligence may consist of an omission to perform a duty owing another as well as of some positive act invading another's rights. The charge against the defendant is not the failure to keep the bed of the stream clear regardless of whether its bridge obstructed the flow or caused the accumulation. It is a failure to maintain the opening through the fill or embankment which it had erected across the stream sufficiently large to prevent its being retarded as it passed through the upper land. The law imposes no duty upon a railroad company or any other lower proprietor to remove debris out of a channel immediately after it collects, as is reflected in Frazier v. Louisville & N. Railroad Co., 231 Ky. 107, 21 S. W. (2d) 140, but it does impose the duty to do so within a reasonable

time. It likewise imposes the continuing duty of exercising reasonable care and diligence to maintain its bridges and culverts with openings sufficient to permit the free passage of water during normal times, which includes storms and floods likely to occur or reasonably to be expected by persons of ordinary experience and prudence, and not cause the flow to be retarded by inadequate openings so as to back it up and damage upper riparian owners. Madisonville, Hartford & Eastern R. Co. v. Kittinger, 143 Ky. 643, 137 S. W. 242; Louisville & N. Railroad Co. v. Conn, 166 Ky. 327, 179 S. W. 195; West & Brother v. Louisville, C. & L. R. Co., 71 Ky. (8 Bush) 404; Illinois Central R. Co. v. Taylor, 89 S. W. 121, 28 Ky. Law Rep. 139; Wallingford v. Maysville & Big Sandy R. Co., 107 S. W. 781, 32 Ky. Law Rep. 1049; Madisonville, H. & E. R. Co. v. Renfro (Ky.) 127 S. W. 508.; Polk v. Illinois Central R. Co., 175 Ky. 762, 195 S. W. 129; 51 C. J. 724; 67 C. J. 699, 706, 708.

Suppose this had been a six-foot culvert, and ordinarily sufficient, and the defendant had allowed sand, silt, and turf to accumulate in it to the depth of four feet with resulting inadequacy of space to care for a usual increase in volume of a stream passing through it. Could the company's responsibility be denied? It would be its duty either to clean out the culvert or otherwise provide for those reasonably anticipated conditions. The beams and track at the top of the opening were over four feet high, and on the two occasions involved these formed a partial barrier and retarded the flow of the water. The provisions originally adequate for the escape of the water, according to the plaintiff's evidence, had become inadequate. It was, therefore, proper to overrule the demurrer to the petition and to deny the peremptory instruction.

The point is made that the instruction submitting the defendant's liability was erroneous. It authorized a recovery for the plaintiff if the jury believed the defendant had negligently permitted drift, earth, and debris to collect in the creek "within the opening provided by the defendant under said bridge for the passage of water" and by reason thereof the creek was rendered insufficient to carry off the water and injury resulted. While the concrete and specific issue was whether the defendant had negligently failed to main-

tain a sufficient opening for the outlet of the water under the bridge, and not whether the bed of the stream under the bridge was permitted to fill up, there is substantially no difference between the form of the instruction and the issue. It was a submission of the question whether certain ·facts which obviously caused the partial closing of the aperture were negligently permitted to exist. We are of opinion that there was no material difference or prejudicial error. Wallingford v. M. & B. R. Co., supra; Chicago, St. L. & N. O. R. Co. v. Hoover, 147 Ky. 33, 143 S. W. 770; Polk v. Illinois Central R. Co., supra.

On cross-examination, Tom Middleton, defendant's section foreman, was asked if while Frank Saulsberry, a plaintiff, was repairing a house damaged by the backwater in 1932, and again a short while later, he had said to Saulsberry that he had been trying to get the railroad company to clean out under the bridge for a year or two. He answered in substance that he did not remember doing so. Over defendant's objection, Saulsberry testified Middleton had made such statements. This was not competent as substantive evidence. Illinois Central R. Co. v. Winslow, 119 Ky. 877, 84 S. W. 1175. However, as Middleton had been testifying about the overflow and the opening under the bridge, both present and past, the question could hardly be said to relate to a collateral matter; and hence it was proper to admit Saulsberry's testimony in contradiction by way of impeachment of the witness, with an admonition by the court as to the purpose of its admission. But the defendant did not ask for such an admonition and it must be deemed to have waived the omission of the court. Most of our cases to this effect are criminal prosecutions, where the duty does not rest upon the defendant to request instructions of any character. Keller v. Commonwealth, 230 Ky. 815, 20 S. W. (2d) 988. In civil cases where that duty devolves upon a party, so much the more is there reason for holding that a failure to request an admonition as to the effect of evidence admitted for a limited purpose waives the omission of the court to give it. Sally v. Brown, 220 Ky. 576, 295 S. W. 890.

Perceiving no prejudicial error, the judgment is affirmed.

Whole court sitting.