MASONITE CORPORATION *v.* BURNHAM *et al.*

(Division B. Feb. 27, 1933.)

[146 So. 292. No. 30384.]

Deavours & Hilbun, of Laurel, **J. L. Taylor**, of Gulf-port, and **Welch & Cooper**, of Laurel, for appellant.

Currie & Currie, of Hattiesburg, Collins & Collins, of Laurel, and **F. C. Hathorn**, of Poplarville, for appellees.

Argued orally by **E. B. Cooper**, for appellant, and **F. C. Hathorn** and **Neal Currie**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellees, R. L. Burnham and his four children, brought this action in the circuit court of the First judicial district of Jones county against appellant, to recover damages for injuries alleged to have been received by appellees resulting from the pollution by appellant of the waters of Tallahalla creek. Appellees charged in their declaration that, because of such pollution, there arose offensive stenches, and that additional mosquitoes were bred thereby, which caused the appellees great personal discomfort, and, in addition, damaged their lands which lay nearby, consisting of their home and five acres on one side of the creek and a farm and sixty-two acres on the other side. The trial resulted in a verdict and judgment in appellees' favor in the sum of two thousand, five hundred dollars; from that judgment appellant prosecutes this appeal.

Jones county is divided into two judicial districts Ellisville is the county seat of the first district and Laurel of the second district. Section 13 of chapter 169 of the Laws of 1906 (the act dividing Jones county into

two judicial districts) provides, among other things, that the jurisdiction of the courts of said districts shall be the same as if each district were a separate county. This action was brought in the Ellisville district. Appellant carries on no business in that district and has no agents nor officers there on whom process can be served; its manufacturing plant is in the Laurel district where it carries on its business. W. H. Mason, vice-president of the company, is in charge of the business there and was served with process. Tallahalla creek runs through Jones county in a southerly direction; it passes through both the Laurel and Ellisville districts. Appellees' home and farm are in the Ellisville district; their residence is on a five-acre block of land about seven hundred feet west of Tallahalla creek, and their farm of sixty-two acres is located about seven hundred feet east of the creek. Appellant empties its refuse materials into the creek near Laurel in that district. The waters of the creek flow on down through the Laurel district into the Ellisville district, and there cause appellees whatever injuries they have suffered on account of the pollution of the waters by appellant.

Appellant pleaded to the jurisdiction of the court, setting up in its plea, in substance, that it is a Delaware corporation; that it was not doing any business in the Ellisville district, and had no officers, no agent, and no servants there; that its plant was located, and its manufacturing business was carried on, in the Laurel district, where it had agents and officers subject to process of the courts of that district. Appellees demurred to the plea, which demurrer was sustained by the court. Appellant assigns that action of the court as error.

We do not pass on this question for the following reasons: The judgment is to be reversed on other grounds to be presently stated. The record in this case shows that appellant was brought into court on sum-

mons served on W. H. Mason, its vice president, who was found in the Laurel district. We have examined the records in the office of the secretary of state; there we found that W. H. Mason, the vice president of appellant company, is its statutory agent for the service of process; still this court cannot take judicial notice of that fact. Globe Rutgers Fire Ins. Co. v. Sayle, 107 Miss. 169, 65 So. 125; National Surety Co. v. Board of Sup'rs of Holmes County, 120 Miss. 706, 83 So. 8. The fact of the appointment of such an agent must be proven. On another trial we assume that this will be done. If and when that is done there can be no further question as to the jurisdiction of the circuit court for the Ellisville district. An action of this character which is transitory in its nature could have been brought in either of the districts. In Sandford v. Dixie Construction Co., 157 Miss. 626, 128 So. 887, the court held that a foreign corporation doing business in this state, which had designated a resident agent within the state for the service of process, could be sued in either the county of the residence of such agent or the county where the cause of action accrued. There has been no change in the governing statutes since that decision. The question here is, Where did this cause of action accrue? Section 495, Code 1930, uses this language: "Where the cause of action may occur or accrue." It is true that the alleged pollution of the waters of Tallahalla creek took place in the Laurel district; there appellant emptied into the creek the refuse matter that in part caused the pollution, but the injuries did not accrue to appellees until the waters passed out of the Laurel district into the Ellisville district. The polluted waters were entirely harmless so far as appellees were concerned until they reached the Ellisville district; there the injuries took place, although the cause arose in the Laurel dis-

trict. We conclude, therefore, that the cause of action accrued in the Ellisville district.

The following is deemed a sufficient further statement of the case in order to develop and dispose of the other questions involved: Tallahalla creek is not a navigable stream; it therefore belongs to the riparian owners. It is something like forty feet wide. As above stated, appellees are not riparian owners; their home is about seven hundred feet west of the creek and their farm about the same distance east. Appellant's plant was established near Laurel in the summer of 1927. In its operation since that time it has emptied its refuse matter into the waters of Tallahalla creek. The city of Laurel for some years prior to the establishment of appellant's plant had, and continuously since has, emptied its sewerage into the creek. It purchased from the riparian owners the right so to do. The evidence tended to show that the sewerage of the city of Laurel alone polluted the waters of the creek through the entire county to such an extent that it caused offensive odors and the breeding of mosquitoes. The evidence tended to show further, however, that the refuse emptied into the creek by appellant increased the stenches and caused the breeding of a greater number of mosquitoes. In other words, the evidence tended to show that the waters of the creek were polluted to a greater extent after appellant began to empty its refuse matter than they were before. Appellee purchased their home and farm in April, 1930. The evidence tended to show that at that time the waters of the creek were being polluted by both the city of Laurel and the appellant. Appellees paid two thousand five hundred dollars for the land; R. L. Burnham, one of the appellees, testified that it was damaged to the extent of two thousand dollars by the pollution of the creek, and, in addition, the testimony for appellees tended to show that they suffered great personal inconvenience on account of the offensive odors from the creek, and because of the mosquitoes.

Appellant requested the court to instruct the jury that appellees were not entitled to recover any damages for depreciation in the value of their land except such as they might have sustained since April, 1930, when they purchased it. The court refused this instruction. That action of the court is assigned and argued as error. We think the instruction should have been given. Appellee, R. L. Burnham, testified that, when they bought the property, they were unaware of the pollution of the stream and the resulting depreciation in the value of the property. Without this instruction, the jury might reasonably have concluded that appellees were entitled to the entire damage to the property, including that which occurred before as well as that which occurred after they bought it. Under the law, appellees purchased the land as they found it, whether they knew of its depreciated value or not. The right of action of their grantor, if any, for the pollution of the stream did not pass to appellee with the conveyance. A purchaser of land after a trespass cannot recover for the trespass. Knapp v. Alexander-Edgar Lumber Co., 145 Wis. 528, 130 N. W. 504, 140 Am. St. Rep. 1091; Milton v. Puffer, 207 Mass. 416, 93 N. E. 634, 32 L. R. A. (N. S.) 1010; Lancaster v. Connecticut Ins. Co., 92 Mo. 460, 5 S. W. 23, 1 Am. St. Rep. 739. If, when appellees purchased the land, it had been depreciated in value by the pollution of the stream as much as it was when this action was brought, they would be entitled to recover nothing on that account. On the other hand, if after they bought the land appellant polluted the creek to a greater extent than it had before, thereby causing further depreciation in the land, appellees would be entitled to recover for such additional depreciation. It is true that appellees only sued for the depreciation in value of the land since they bought it, nevertheless the evidence took such wide range that we think the jury should have been confined, by the giving

of this instruction, to a consideration alone of the elements of damage to the land above set out.

Appellant requested several instructions to the jury, which were refused by the court, to the effect that, although the jury might be satisfied from the evidence that appellant contributed to the pollution of the creek, if the jury also believed from the evidence that the damages suffered by appellees were contributed to by the independent acts of others in polluting the creek, then appellant would only be liable for its contribution to the pollution of the stream and the damages resulting therefrom, and not for the independent acts of others contributing to such pollution and the damages resulting therefrom. The action of the court in refusing these instructions is assigned and argued as error. It will be observed that the instructions presented the question whether or not appellant and the city of Laurel were joint tort-feasors in the pollution of the stream, and liable therefor both jointly and severally. In other words, was each liable for the whole damage? We think the opinion in the case of City of Mansfield v. Bristor, 76 Ohio St. 270, 81 N. E. 631, 10 L. R. A. (N. S.) 806, 118 Am. St. Rep. 852, 10 Ann. Cas. 767, is a very able discussion of this question. In it many authorities are reviewed. The court held that, where different parties discharged sewerage and filth into a stream which intermingled and caused an actionable nuisance, they are not jointly liable for damages where there is no common design or concert of action, but each is liable only for his proportion of the damages.

Farley v. Crystal Coal & Coke Co., 85 W. Va. 595, 102 S. E. 265, 267, 9 A. L. R. 933, is to the same effect. In deciding this case, the Supreme Court of West Virginia overruled one of its former decisions (Day v. Louisville Coal & Coke Co., 60 W. Va. 27, 53 S. E. 776, 10 L. R. A. (N. S.) 167), and in overruling it said that there had been

a failure on the part of the court to observe and apply a well-defined and firmly grounded exception to the rule of liability of joint tort-feasors; that this exception or limitation was that there is no joint liability, nor liability for the entire damages when the tort-feasors "act independently, without concert, collusion, or common design, and the injury to the plaintiff is consequential only, or remotely resulting, as contradistinguished from direct and immediate." The court said further that the overwhelming weight of authority stood against the decision in Day v. Louisville Coal & Coke Co.

In Symmes v. Prairie Pebble Phosphate Co., 66 Fla. 27, 63 So. 1, 3, in discussing this question, the court said: "A joint tort is essential to the maintenance of a joint action for damages therefor against several parties. For separate and distinct wrongs in no wise connected by the ligament of a common purpose, actual or implied by law, the wrongdoers are liable only in separate actions and not jointly in the same action. . . . Torts that are several, separate, and independent acts when committed do not become joint by the subsequent union or intermingling of their consequences where no concert of tortious action or consequence is intended by the parties or implied by law. An implied concert of action between tort-feasors may grow out of the status or relation of the parties and the conditions under which the tortious acts proximately cause an actionable injury."

The Ohio, West Virginia, and Florida cases are supported by the following: Swain v. Tennessee Copper Co., 111 Tenn. 430, 78 S. W. 93; Miller v. Highland Ditch Co., 87 Cal. 430, 25 Pac. 550, 22 Am. St. Rep. 254; Bowman v. Humphrey, 124 Ia. 744, 100 N. W. 854; Blaisdell v. Stephens, 14 Nev. 17, 33 Am. Rep. 523; Chipman v. Palmer, 77 N. Y. 51, 33 Am. Rep. 566; Little Schuylkill Navigation, Railroad & Coal Co. v. Richards' Adm'r, 57 Pa. 142, 98 Am. Dec. 209; Norton v. Colusa Parrot Mining

& Smelting Co. (C. C.), 167 Fed. 202; Jones v. Tenn. Coal, Iron & R. Co., 202 Ala. 381, 80 So. 463; Willard v. Red Bank Oil Co., 151 Ill. App. 433; Polk v. Ill. Cent. R. R. Co., 175 Ky. 762, 195 S. W. 129; United Copper Co. v. Jordan (C. C. A.), 14 Fed. (2d) 299; Tennessee Coal, Iron & R. Co. v. Hamilton, 100 Ala. 252, 14 So. 167, 46 Am. St. Rep. 48; Pulaski Anthracite Coal Co. v. Gibboney Sand Bar Co., 110 Va. 444, 66 S. E. 73, 24 L. R. A. (N. S.) 1185. There are authorities to the contrary, but we think the principles laid down by the Ohio, West Virginia, and Florida courts, supported by the courts of the other states referred to, are grounded on better reasoning and are sound.

There is no decision of our court directly in point either on its facts or on principle. The case of King v. Ruth, 136 Miss. 377, 101 So. 500, is more nearly in point than any other. That was an action to recover damages for the value of corn belonging to the plaintiff, alleged to have been destroyed by the defendant's hogs. The evidence showed that on several occasions the defendant's hogs were seen in the plaintiff's cornfield, but that the hogs of other persons were also seen in the plaintiff's field where the corn was destroyed. In other words, the evidence showed that the plaintiff's corn was destroyed, not alone by defendant's hogs, but by the hogs of others of his neighbors. The court held that, where animals separately owned unite in committing an injury, each owner of the animals is responsible only for the damage done by his; and, in a case where only one of such owners is sued, he can be held liable only for the proportion of damage done by his animals.

Nelson v. Ill. Cent. R. R. Co., 98 Miss. 295, 53 So. 619, 31 L. R. A. (N. S.) 689, is not in point. There was involved in that case a tort by a servant of a sleeping car company. The court held that the sleeping car company was an agency of the railroad company, and therefore the

servant of the sleeping car company was the servant of both companies, and their liability for the tort was both joint and several. Neither is Oliver v. Miles, 144 Miss. 852, 110 So. 666, 50 A. L. R. 357, in point. That was a case where two persons went hunting together; they fired their guns across the public road at the same time, and wounded the plaintiff who was traveling thereon. The court held that the hunters, on account of being engaged in a joint enterprise, were jointly and severally liable for the tort.

In Westerfield v. Shell Petroleum Corp. et al., 161 Miss. 833, 138 So. 561, 562, the court used this language: "Joint tort-feasors are both jointly and severally liable, and may be proceeded against singly, jointly, or individually, or all combined. . . . And this is true, although there was no common duty, common design, or concert of action between the joint tort-feasors." That was an action for a personal tort; the defendants were Mrs. Harrison and the Shell Petroleum Corporation; the plaintiff was Mrs. Westerfield. There was a nonsuit taken against the Shell Petroleum Corporation. The evidence tended to show that both the Shell Petroleum Corporation and Mrs. Harrison contributed to the tort. The court held that they were both joint tort-feasors and jointly and severally liable. The evidence tended to show in that case, however, that there was concert of action between the joint tort-feasors, not by agreement, it is true; each joint tort-feasor was fully aware of the negligence of the other, and proceeded then and there to contribute to the injury; they acted jointly although without agreement The last clause of the opinion quoted above was beyond the case. Substantially the same language was used in the Nelson case; clearly it was not decision in that case, because the servant of the sleeping car company was also the servant of the railroad company.

If A and B at the same time and place, whether acting by agreement or independently, unlawfully assault and beat and bruise C, they are liable both jointly and severally for the tort. On the other hand, if A should unlawfully assault and beat and bruise C, and B had no hand in the commission of the tort, but later on meets C and unlawfully assaults and beats and bruises him, and A has no part in the commission of the tort, each is only liable for his own tort; they are not joint tort-feasors.

The evidence in this case showed without conflict that in the pollution of the creek appellant and the city of Laurel acted independent of each other. There was no common design between them and no concert of action. The means they used in the pollution of the stream were entirely different; the pollution by the city was caused by its sewerage, that of appellant was by the effluent from its factory.

Appellant requested and was refused an instruction that the jury could not, under their oaths, award appellees any damages because of the existence of mosquitoes claimed to have been bred and grown in the waters of the creek. We think this instruction was properly refused. The evidence for appellees, although weak, tended to show that there was an increase in mosquitoes after appellant began to empty its refuse matter into the stream.

The court refused appellant's request for the following instruction:

"The court instructs the jury for the defendant that in fixing the amount to be awarded the plaintiffs you cannot under your oaths award plaintiffs any damages on account of the following items:

"1. Causing impure water to flow in the creek.

"2. Causing a sediment to settle on the bottom or banks of the creek.

"3. Causing the death of fish in the creek.

"4. Making the waters of the creek unfit for bathing, or drinking, or cooking, or washing, or any other purpose to which water is put.

"5. Causing worms to be in the creek.

"6. Causing wiggletails or mosquitoes to be in the waters of the creek except in so far as this may, if at all, increase the number of the mosquitoes."

This instruction was properly refused. We do not mean to hold, however, that it would have been error to have given any one paragraph of the instruction in connection with the first clause. If requested, the court should have given appellant an instruction embodying the first clause of the instruction refused and paragraph 3 thereof. Appellees were not riparian owners; they therefore had no right or title to the fish of the creek; they were not concerned as to whether they were destroyed by the pollution of the stream or not, unless their destruction resulted in offensive odors that reached appellees. What has been said with reference to the third paragraph of the requested instruction is true of the fourth. Appellees, not being riparian owners, were not concerned as to whether the waters of the creek were rendered unfit for bathing, or drinking, or cooking, or washing; and the same is true of paragraph 6 of the instruction.

The court instructed the jury for appellees that the fouling of the stream was a nuisance per se, and, if they believed from the evidence in the case that the effluent from the appellant's plant fouled the stream, then appellant was guilty of creating a nuisance. Appellant assigns the giving of this instruction as error. A stream wholly on the land of another which has been polluted by the owner or any other person is not a nuisance per se to one who is not a riparian owner; as to such person it is not a nuisance unless his rights are invaded by the

pollution; they may or may not be. We think it was error to give this instruction.

We do not think any of the other assignments of error are well founded, nor do we think they present questions of such gravity to call for a discussion by the court.

Reversed and remanded.