MASONITE CORPORATION *v.* STEEDE.

(In Banc. March 26, 1945. Suggestion of Error Sustained in Part and Overruled in Part Nov. 12, 1945.)

[21 So. (2d) 463. No. 35751.]

**Welch & Cooper,** of Laurel, **H. P. Heidelberg,** of Pascagoula, and **O. F. Moss,** of Lucedale, for appellant.

534

**Ford & Ford,** of Pascagoula, for appellee.

**Ford & Ford,** of Pascagoula, for appellee, on suggestion of error.

Welch & Cooper, of Laurel, **H. P. Heidelberg**, of Pascagoula, and **O. F. Moss**, of Lucedale, for appellant, on suggestion of error.

**Smith, C. J.,** delivered the opinion of the court.

The appellee recovered a judgment for the loss of profits she claims she would have made in a business operated by her which she claims was destroyed by the appellant.

The appellant owns, and for a number of years has been operating, a manufacturing plant on the banks of Tallahala Creek at Laurel, Mississippi, and discharges daily from this plant into the creek a large amount of water containing wood fibre. Tallahala Creek flows into Leaf River and Leaf River into Pascagoula River. The appellee owns lands on Pascagoula River and there operated in 1941, and several years prior thereto, a fishing resort equipped with all necessary fishing facilities, and for a compensation would supply those who came thereto with boats, bait, board and lodging. According to the appellee's declaration and evidence "a tremendous slug of said fibre" came down Pascagoula River in June 1941 and killed practically all of the fish therein, "leaving only such few as managed to run up into lakes and branches;" because of which "it would probably have taken three to five years for fish life to be restored in the streams, if there had been no further polution." After this killing of the fish, fishermen ceased to come to appellee's fishing resort for the reason that "one could catch so little fish that it was not worth while to try," because of which, her "business was substantially destroyed or virtually so." There was another destruction of fish in

this river from the same cause in 1942, and another in July, 1943.

The appellee sues for loss of profits from this business. Her declaration covers the whole period between July, 1941 and the filing of her declaration in October, 1943, but it developed in the evidence that the appellant had paid her for all damage sustained by her in 1941 and 1942 because of the killing of the fish in those years. Consequently, she limited her claim by her requested instructions to loss of profits in 1943. The declaration also claims damages for fish "killed in boxes" belonging to the appellee, and for depreciation in value of her equipment, but no claim therefor was made at the trial.

This is not an action for immediate, but for consequential, injury to the appellee caused by the killing of the fish in the Pascagoula River, and since she has been compensated for the injury occasioned her by the killing of the fish in 1941 and 1942, the action must be limited to one for the killing of fish in 1943. It sounds in damages and a cause of action appears if, but not unless, it is "shown with reasonable certainty that damage was suffered (by the appellee) and that such damage resulted from the act or omission complained of (the killing of the fish in 1943.)" 25 C. J. S., Damages, Section 27; 15 Am. Jur., Damages, Section 20; Kress & Company v. Sharp, 156 Miss. 693, 126 So. 650, 68 A. L. R. 167.

The evidence as to appellee's damage is in substance, as follows: She was equipped to accommodate forty-five guests at one time, and her profit from the business prior to 1941, was about $2,500 per annum. In 1943, only a few guests came to the appellee, and they would remain only a few days, from whom she received not more than $15 per month. What her expenses were for operating the business that year does not appear. There is nothing in this evidence that would warrant a jury in finding that but for the 1943 killing of the fish, the appellee would have had more patrons during that year and would have made a greater profit from the business than she in fact

did. In other words, damage to the appellee because of the killing of the fish in 1943 does not appear with such reasonable certainty as to warrant a jury in acting thereon. From this, it follows that the court below should have granted the appellant's request for a directed verdict in its favor.

This opinion assumes, but merely for the purpose of the argument, that the damage here sought is recoverable if properly proven.

Reversed and judgment here for the appellant.

DISSENTING OPINION.

**Alexander, J.,** delivered a dissenting opinion.

I agree that the cause ought to be reversed, but am of the opinion that it should be remanded for hearing upon the issue of damages under proper instructions. The jury was warranted in finding that the pollution of the stream was at least substantially contributed to by the fibrous effluent discharged therein by appellant. The right of the plaintiff to maintain her action was sanctioned by Masonite Corporation v. Burnham, 164 Miss. 840, 146 So. 292, 91 A. L. R. 752.

To deny plaintiff's rights, it ought not to be sufficient merely to generalize her damages as consequential; the test of liability is a matter of proximate result. In the Burnham case the same effluent caused an increased infestation of mosquitoes. This, in turn, caused annoyance and damage, yet it was not condemned as merely consequential, but distinctly upheld by this Court.

The plaintiff had a right as a riparian owner and as a citizen to the use of the stream unpolluted, and to establish her business upon her right to use the stream as an asset. The defendant had the duty not to injure this right. It was, therefore, an unlawful violation of a private legal right. It is of no consequence that plaintiff did not own the waters nor the fish therein. She

is not suing for damage to the fish. Yet she had the legal right to take them. She does not sue for killing the fish, but for killing her business. It could not be denied that, had she captured fish within a live box, recovery for their destruction could be allowed. She did not own the waters, but she had the right to employ them in her business whether it be to turn the wheels of a mill or to float her fishing craft or to utilize them in any way in the conduct of her modest enterprise. Damage to one's person or business by noxious fumes or odors has never been denied upon the ground that plaintiff did not own the atmosphere. Has slander ever been refined into damnum absque injuria by an analysis which disclosed that the spoken words were conveyed by the mysteries of atmospheric wave lengths through a medium which plaintiff did not own?

There is nothing complicated nor novel in the conception that loss of business is an element of damage in nuisance cases. 25 C. J. S., Damages, Sec. 90, p. 633. The phrase should not be broken down into a lot of smaller component links so as to attenuate the chain of causation beyond its capacity to bind cause and effect.

The controlling opinion places emphasis upon the contention that a killing of fish in 1943 is not sufficiently shown. Yet the controlling consideration is not the date of the cause but of its effect. Damage in 1943 was shown. The time when the forces of destruction were set in motion ought to be as irrelevant as the date when any potential menace was created. The gradual burning of a time fuse may prolong the ultimate moment of damage and liability, but it should not be allowed in its delayed progress, to burn away responsibility for its setting.

I must confess an inability to find apposite an illustration whereby A seeks damages from B for his destruction of C's mine property. Here A has no right to demand that C continue his development of the mine so that A may enjoy incidental profits from his housing facilities. In the instant case there are only two parties, the owner

of the business and the party destroying it. It is important also to note that here the plaintiff has the right to demand that her adjacent waters continue to flow and that they be not disturbed to her hurt. In the suggested case A could not sue C for a voluntary abandonment of his business for C has the right at any time to stop the flow of its custom or to pollute its progress by inefficiency. Plaintiff launched her business upon the banks of the stream that only the sovereign could control, and in whose wholesome maintenance that sovereign was bound to co-operate.

The error which I concede is the failure of the trial court to restrict defendant's liability, if any, to its proportionate share of responsibility. This rule was recognized in Masonite Corporation v. Burnham, supra. Instructions to this end were refused. This principle is recognized in the following cases, all of which are strikingly in point: Pulaski v. Gibboney Sand Bar Co., 110 Va. 444, 66 S. E. 73, 24 L. R. A. (N. S.), 1185; Little Schuylkill, etc., Co. v. Richards' Adm'r, 57 Pa. 142, 98 Am. Dec. 209; Harley v. Merrill Brick Co., 83 Iowa, 73, 48 N. W. 1000; Swain v. Tennessee Copper Co., 111 Tenn. 430, 78 S. W. 93. These cases discuss reasonably the bases for adjudging the respective responsibility of separate contributors and decry any tendency to dismiss such cases as not providing a mathematically accurate basis for computing damage.

Since the concurring opinion is not grounded upon 'geographical, but upon causal remoteness, it states a principle which would immunize the defendant from liability, even to an adjoining proprietor whose business depended upon the use of the waters of a navigable stream which defendant has been authorized practically to expropriate. Such damaged business, whether using the waters for the manufacture of ice or for restaurant, bottling, or other purposes is apparently to be integrated with the other macerated components of appellant's finished product,

and the crushed fragments of a lesser industry have become but worthless bits of residual waste.

**Roberds, J.,** joins in this dissent.

CONCURRING OPINION.

**Griffith, J.,** delivered a concurring opinion.

As will be observed from the opinion in chief, the action here is for consequential damages to the business of plaintiff and for loss of profits therein, and involves the following steps in the line of causation; (1) That the stream was polluted by putting suspended wood fiber therein; (2) that the fish were killed by the presence of the fiber; (3) that the river up and down in proximity to plaintiff's property became, for the reason next before stated, a poor fishing territory; (4) that the fishermen, or those who indulged in the relaxation of that sport, thereupon ceased coming to this territory; (5) that their ceasing to come deprived plaintiff of their patronage; and (6) that in the loss of their patronage plaintiff lost the profits of her business which theretofore had been in the entertainment of the sports fishermen.

If, then, plaintiff had no cause of action for the killing of the fish, it would follow inevitably that she has no cause of action out of the steps subsequent thereto in the line of causation, laying aside the issue whether steps 4, 5 and 6 are proximate rather than remote causes.

A cause of action in tort comprehends a primary right possessed by the plaintiff and the corresponding primary duty resting upon the defendant, and the delict or wrong done by the defendant in breach of such primary right and duty. 1 C. J. S., Actions, Sec. 8, p. 984; 1 Am. Jur., p. 417. Legal damage resulting from some injury to the right of plaintiff or from the breach of a duty owing to him is a necessary element of a cause of action in his favor. The primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense. 1

Am. Jur., p. 422. A cause of action consists of a right belonging to the plaintiff and some wrongful act or omission done by the defendant by which that right has been violated,—there must have been some right, title or interest in the plaintiff which has been violated or some duty to him which has been broken. A wrong done to the property of another person is not sufficient, for the plaintiff is not to be the vicarious beneficiary of such a breach of duty to another. See numerous causes Vol. 6 Words & Phrases, Perm. Ed., "Cause of Action." A tort is an unlawful violation of a private legal right not created by contract. 1 Chapin on Tort, p. 1.

No primary right possessed by plaintiff was violated by the defendant in this case. The tort complained of was that the defendant killed the fish in the Pascagoula River, but plaintiff did not own the fish or any legal right or interest therein whatsoever. She had as well have complained that the defendant had killed or frightened away all the game in the adjacent woods and thereby driven away the hunters who were her patrons. Nothing is better settled in this state than the law that fish are feræ naturæ, and that no person, other than the state, has any property in them until he has actually captured them and reduced them to his actual possession. Ex parte Fritz, 86 Miss. 210, 38 So. 722, 109 Am. St. Rep. 700. In Masonite Corporation v. Burnham, 164 Miss. 840, 859, 146 So. 292, 296, 91 A. L. R. 752, the Court said: "Appellees were not riparian owners; they therefore had no right or title to the fish in the creek; they were not concerned as to whether they were destroyed by the pollution of the stream or not, unless their destruction resulted in offensive odors that reached appellees." And in the later case, State Game & Fish Commission v. Louis Fritz Co., 187 Miss. 539, 193 So. 9, all the Judges concurred in the holding that a riparian owner does not own any of the fish in waters such as is the Pascagoula River.

Thus the primary question before us has been decided by this Court. Plaintiff had no right, title or legal interest

in the fish as they existed in their wild state in this large stream; and possessing no such right, no tort was committed against her in their killing—she had no cause of action in such a foundation of fact. There is no allegation and certainly no definite proof that after appellant had contributed to the killing of the fish, it left their dead bodies along the banks of her riparian land, or that there were any offensive odors therefrom to interfere with the use of her property—her action stands on the remote consequences stated under the foregoing numerals (4) to (6), and these involved the intervening, independent, voluntary action of third persons.

Therefore, while I fully concur in the opinion in chief that there has been no proof which will validly support a verdict under the last-mentioned numerals, I am of the further opinion that, without reserving the point, the decision should be laid back of these and that plaintiff has no cause of action whatever, and this under numeral (2).

Let us suppose that a large mine employing hundreds of miners has been flooded by a tort feasor, so as to render the mine unusuable for many months.. The miners to obtain work go to another territory, leaving a boarding-house near the injured mine without boarders. Would the boarding-house keeper have a cause of action against the tort feasor who injured the mine for the loss of the boarding-house profits, when he had no right, title or interest in the mine? It is true that the tort feasor has caused a condition without which the loss would not have occurred, but he violated no right, title or interest of the boarding-house keeper, and to allow recovery in such cases would bring on a train of legal consequences which would be intolerable in any practical system of jurisprudence.

It is to be observed that plaintiff was not herself engaged in commercial fishing within her riparian boundaries, and her action is not laid upon any such basis. In fact, she does not show what her riparian boundaries were, or whether a few rods on each side, or more. Her com-

plaint is that her patrons, or those who would be her patrons, were caused to stay away. It is to the precise case presented that this concurring opinion is directed.

**L. A. Smith, Sr.,** and **McGehee, JJ.,** concur.

ON SUGGESTION OF ERROR.

**Sydney Smith, C. J.,** delivered the opinion of the court on suggestion of error.

The appellee's action is for the recovery of damages for the practical destruction of a fishery business, the actual damages claimed therefor being the loss of profits therefrom. The main opinion rendered herein when the judgment of the court below was reversed, which appears in 21 So. (2d) 463, correctly held that she had failed to prove with a reasonable degree of certainty any loss of profits, and therefore the judgment of the court below should be reversed, but it was incorrect in further holding that because no loss of profits was thus shown the appellant's request for a directed verdict should have been granted. The appellee's failure to prove actual damages for the destruction of her fishery business did not bar her from recovering nominal damages therefor. In order, therefore, to hold that the appellant's request for a directed verdict should have been granted some other reason must appear therefor. Three such reasons are advanced, (1) that the evidence is insufficient to warrant a jury in finding that the effluent placed in the river by the appellant contributed to the killing of the fish; (2) that the evidence discloses that the appellee's fishery business was destroyed by the killing of fish in 1941, for which she had been paid by the appellant, consequently she had no such business to be again destroyed in 1943; and (3) that although the effluent discharged into the river from the appellant's plant may have contributed to the killing of the fish in the river the appellee has no cause of action

therefor against the appellant for the reason that she did not own the fish.

The first two of these asserted reasons are without merit for it is clear from the evidence that the jury would be warranted in finding that the destruction of the fish was contributed to by the effluent permitted by the appellant to escape from its plant, and that her fishery business though decreased in volume by the killing of the fish in 1941 was still in existence in 1943 and was still being operated by her.

The facts relative to the existence vel non of a cause of action in the appellee for the killing of the fish appear in our former main opinion and will not be here repeated.

The appellee did not own the fish, but she and all other persons who could obtain access to Pascagoula River had the right to take fish therefrom and dispose of them at pleasure; in addition, the appellee had the right to permit or exclude others from obtaining access to the river over her property, and to grant permits therefor on her own terms. Both of these are valuable rights for the destruction of which by the pollution of the river she would be entitled to recover damages. 22 Am. Jur., Fish & Fisheries, Section 25, and cases cited in note to Johnston v. Galva, 316 Ill. 598, 147 N. E. 453, 38 A. L. R. 1384, at page 1395.

On the evidence the jury was warranted in finding, as it did, that the effluent from the appellant's manufacturing plant polluted the river and materially contributed to, if it did not solely cause, the death of the fish, which resulted in the practical destruction of the appellee's fishery. One of the elements of the value of the appellee's right to permit others to obtain, or exclude others from obtaining, access to this river in order to fish therein, was to use it to promote a commercial purpose within limitations not here necessary to set forth. In order for persons permitted by her to obtain access to the river to be enabled to fish therein, they must have fishing tackle, bait, boats, and if they remain there for any length of time food and

lodging, the furnishing of which is so closely related to the appellee's right to permit persons to obtain access to the river on her own terms as to become virtually a part of it. If the killing of the fish caused persons to discontinue availing themselves of the appellee's fishing facilities, the principal element of the value of this right of the appellee was destroyed; and she is entitled to damages therefor,—and actual if she proves such, but nominal if she does not. Consequently, the court below committed no error in refusing the appellant's request for a directed verdict in its favor.

One of the errors complained of by the appellant is the admission of certain evidence introduced by the appellee. One Bond testified on behalf of the appellee as to the effluent cast into the river by the appellant and its effect on the fish therein. In the course of his examination in chief he stated in reply to questions directed thereto: "They got a bunch of fishermen and took us up there, and they showed us over the plant, and showed us the ponds and spillways, and where the stuff run out of the ponds and into the creek and down the river." Later on in his examination in chief he stated there were 12 or 15 in this party, that defendant took them up there and the party was in charge of Mr. Grant, that they furnished transportation, entertainment, and bore all expenses. He was then asked this question by counsel for the appellee, plaintiff in the court below:

"Q. As you went up and got there what, if anything, did they furnish to drink? (Defendant objects.)

"By the Court: Let him go ahead and state. I don't think it is material.

"A. They furnished anything we wanted to drink."

The examination then proceeded as follows:

"Q. Did they drink? A. Yes, sir.

"(Question does not appear.) A. Some drank beer and some drank whiskey and some drank soft drinks.

"Q. What did you drink? A. Beer.

"Q. Did they get under the influence of it? A. Some of them did.

"Q. Did they give you dinner? A. Yes, sir.

"Q. What did they have to drink there? A. Beer, whiskey and soft drinks.

"Q. Did anybody get under the influence of it? A. Yes sir. (Defendant objects.)

"By the Court: I will sustain the objection to the last question and answer."

It will be observed that the witness answered the question as to whether anybody came under the influence of the whiskey, but no request was made of the court to direct the jury to disregard that answer. All of this evidence was irrelevant and immaterial and therefore on proper objection should have been excluded. But was it prejudicial to the appellant, and if so, harmful enough to require a reversal of the judgment? Counsel for the appellant say that it "carried with it certain suggestions or insinuations which in the minds of a great number of people would be very harmful . . . the purpose and the effect of this testimony is so clearly evident that it requires no argument, it is harmful and its harmful effect is clear." It can only have harmed the appellant by causing the jury to resent its serving of intoxicating liquor to this party of fishermen but to say that it had this effect would be a mere guess and we must presume that the jury was composed of honest and intelligent men who would not let such evidence have any effect on their verdict. Moreover, when it appeared from the answer of the witness that intoxicating liquor was served, the appellant should have, but did not, then object to it, but objected only to the question as to whether anybody came under the influence of the whiskey. But aside from that we are unable to say that the evidence was in fact sufficiently prejudicial, if at all, to justify the reversal of the judgment because of it.

Another of the appellant's complaints is the granting to the appellee of an instruction permitting the jury

to award her more than nominal damages, and refusing the appellant's request for the following instruction: "The court instructs the jury that if you should find for the plaintiff, you cannot under the law return a verdict for more than nominal damages."

As hereinbefore appears the court below, on the evidence before it, should have limited the appellee's recovery, if any, to nominal damages for the reason that she failed to prove with reasonable certainty any actual damages. But another reason advanced by counsel for the appellant in support of this refused instruction may confront the court below on another trial and for that reason should not now go unnoticed.

It appears from the evidence that effluent was cast into this river by others acting independently of the appellant which it claims contributed to the pollution of the river and to the death of the fish. If this is true, the appellant is only responsible for its proportionate part of the damage inflicted. Masonite Corporation v. Burnham et al., 164 Miss. 840, 146 So. 292, 91 A. L. R. 752; 4 Rest. Torts, Section 881; 39 Am. Jur., Nuisance, Section 38; 46 C. J. p. 749; Swain v. Tennessee Copper Co., 111 Tenn. 430, 78 S. W. 93 (an instructive case). Counsel for the appellant say that its request for this instruction should have been granted for the reason that the evidence is not such as to enable the jury to determine what part of this damage should be charged to the appellant. It was not necessary for the jury to determine accurately what the appellant's proportionate part of this damage is, but only that its part was not less than a certain percentage thereof, and then apportion the damage to the appellant accordingly. Cf. Ruth v. King, 136 Miss. 377, 101 So. 500. It will not be necessary for us to decide whether the evidence in this record is sufficient for that purpose since the instruction should have been granted for another reason. This same criticism applies to the other instructions requested by the appellant as to so limiting the amount of the appellee's recovery, if any.

It follows from the foregoing views that no error appears in the jury's verdict in so far as it charges the appellant with liability for the destruction of the appellee's fishery business, but that the court below erred in not limiting her recovery to nominal damages. For which reason the judgment should be reversed, but in so far only as it fixes the amount of the appellee's damages and the case will be remanded to the court below for a new trial on that issue only. Of course, if the appellee should enter a remittitur for all the damages awarded her other than such as are what this Court may say is nominal, the judgment will be affirmed; but if not, the judgment heretofore rendered reversing it will remain in effect but will be modified so as to not be final but on reversing the judgment of the court below and remanding the case to that court for a new trial, but only as to the amount of the damages to be awarded the appellant.

Suggestion of error sustained in part and overruled in part.

**Alexander, Roberds,** and **McGehee, JJ.,** concur in this opinion.

PARTIALLY DISSENTING OPINION.

**Griffith, J.,** delivered a partially dissenting opinion.

The statement that the exclusive right to fish at a certain place in either public or private waters is a property right and that a direct injury to such a right is actionable is not challengeable, to which there may be added that the pollution of a stream to the injury of the right.is a direct injury entitling the owner to nominal damages, whether there has been any actual injury in a proved amount or not.

And it has been settled, if anything on this subject can be regarded as settled in this jurisdiction, that the only exclusive right to fish in the navigable waters of this

state is that which belongs to the riparian owner co-extensive with the boundaries of his soil under the bed next adjacent to his bank or banks, and this for commercial fishing, and that all other fishing rights in such waters are fisheries in common. State Game & Fish Comm. v. Louis Fritz Co., 187 Miss. 539, 193 So. 9, wherein the opinion in this regard, pages 563 to 567 of 187 Miss., pages 11, 13, of 193 So., had the concurrence of the majority of the judges.

There is scarcely a word in the testimony and certainly there was no substantial evidence that plaintiff was or had been engaged in the catching of fish for commercial purposes; and there is no definite evidence as to the boundaries of her riparian soil, and whether this was much or little. Her whole case was bottomed upon the proposition that fishermen in common who had theretofore generally come from here and there to the waters of the Pascagoula River to fish had, because of the killing of the fish up and down therein, ceased to come to that neighborhood and had, therefore, ceased to avail of the facilities which she had maintained for their use and entertainment, and that her loss and injury was in the profits which she would have thereby made had the fishermen in common continued to come.

The wrong of which she complains is, therefore, one which was inflicted upon the fishermen in common. Assuming for the sake of the argument, but for that purpose only, that each of the fishermen in common would have had a right of action for the injury to him, it would not inure to some other or any other person; for one of the first things learned on opening any text-book on torts is that the breach of duty, which is an essential element, must be one owed to the primary party or parties and that a third party is no party,—in the law of torts a third person cannot be the vicarious beneficiary of a breach of duty owed to another, whether by omission or commission. Numerous authorities to this effect are cited in the third paragraph of the concurring opinion, 21 So. (2d) at

page 465, the soundness of which no effort was made to controvert in the suggestion of error, for the very good reason that none could well be made.

But the main opinion now handed down says that the injury to the other parties is or in some respects may be so closely connected with plaintiff's business as to become virtually a part of it. No authority is cited which supports the statement, and it is submitted that it not only introduces a novel proposition in the law of torts but one which, if pursued, ''would bring on a train of legal consequences which would be intolerable in any practical system of jurisprudence.'' Except as to nominal damages, I regard it as my duty to adhere to the concurring opinion heretofore given in the case.

**L. A. Smith, Sr., J.,** concurs in the above.