STATE v. CUMMINGS.

(In Banc. May 24, 1948. Suggestion of Error Overruled June 14, 1948.)

[33 So. (2d) 636. No. 36756.]

Crawley & Ford and **John C. Love,** all of Kosciusko, for appellant.

J. P. Coleman and W. D. Coleman, both of Ackerman, and J. Ed. Franklin and L. F. Easterling, both of Jackson, for appellee.

Argued orally by William E. Ford, for appellant, and by J. P. Coleman, for appellee.

Roberds, J., delivered the opinion of the court.

On April 5, 1932, the W½ of the SW¼ of Section 7, Township 19, Range 11, situated in Choctaw County, this State, was sold to the State of Mississippi for nonpayment of taxes thereon for the year 1931. The land was then owned by and assessed to L. D. Hemphill.

The State, on August 31, 1936, executed a patent to said land to appellee Cummings.

On June 19, 1946, the State Land Commissioner filed the bill in this cause to annul and cancel that patent on the grounds that Cummings failed to answer certain questions in the application for the patent and made false answers to other questions therein. Cummings denied

these charges, and, in addition, contended the bill should not be sustained because (1) he, Cummings, took charge of the land under the patent, made extensive improvements thereon, had paid the state and county taxes for eleven years and drainage taxes for two years, and that, for these reasons, the doctrine of laches barred the suit; and (2) that the proceeding, while technically in the name of the State, was in fact brought for and on behalf of the heirs of Hemphill, the former owner, and that said heirs had engaged and agreed to pay the attorneys who were prosecuting the suit. The chancellor found as a fact that the attorneys had been so employed but declined to dismiss the suit for that reason. He further found that the application contained no material ommission or misstatement of fact invalidating the patent, and, in addition, that the State was barred by laches from successfully maintaining the suit. He, therefore, dismissed the bill and sustained Cummings' cross bill, and entered a decree validating Cummings' title as against the State. From that decree the Land Commissioner appeals.

We pretermit the question of laches and go at once to the deciding question in the case, and that is whether the chancellor was manifestly wrong in holding that the State failed to prove that Cummings, in procuring the patent, was guilty of actual fraud under the applicable provisions of Chapter 309, Laws of Mississippi 1940, Sections 1315 to 1322, Miss. Code of 1942, applying thereto the facts as found by the chancellor. Section 1317, Code 1942, imposes on the chancery court, in a proceeding of this nature, the duty to validate and perfect titles under patents from the State ''. . . unless it shall appear to the court and the court shall find as a fact that the state has not acquired title to said land by virtue of said tax sale, or that the title to said land involved in the suit was divested out of the state of Mississippi without payment of purchase price or by reason of actual fraud on the part of the patentee, or his representatives . . .,'' nor shall a patent theretofore issued be cancelled because of

the loss of the application to purchase the land, "or because of errors or ommissions or incorrect statements in said application, or other papers in connection with the sale of said land, such matters not constituting fraud as above defined." The validity of the patent in question is challenged under the foregoing statute on the ground (1) that Cummings in his application in response to the question "Acres in timber?" answered "None," and to the question "Description of timber and value," he answered "cut-over"; and (2) in response to the question "Amount of state land purchased during 1936," he answered "None."

As to the first contention, the proof on behalf of the Commissioner showed there was considerable merchantable timber on the land when the application was made; the proof on the part of Cummings was to the effect it contained no timber of appreciable value at that time; that Hemphill sold and removed from the land all of the timber of any value after the sale to the State. The chancellor accepted the evidence of Cummings on that question and it amply supports his finding.

On the second question, the opinion of the chancellor states "The Court further finds that the defendant made application for the purchase of 124 acres of land in 1935, and did all things required of him, including the payment of the purchase price, to secure a patent to same, . . ." but that the State did not issue the patent until January 15, 1936. The chancellor further held that the statement of Cummings in his application that he had not purchased any land from the State in 1936, as above set out, did not prove him guilty of "actual fraud" under said Section 1317. Can we say he was manifestly wrong in that conclusion? Said Section 1317 requires establishment of *actual* fraud on the part of the patentee, or his representative, in procuring the patent before it can be cancelled on the ground of fraud. Actual fraud is defined in 37 C. J. S., Fraud, Sec. 2, p. 210, in these words: "Actual fraud is intentional fraud, an intent to deceive being

an essential element thereof. It means fraud according to common conscience, and that the party charged therewith was inspired by a deliberate, fraudulent purpose to injure and deceive the party complaining; it implies deceit, artifice, and design, and imports the active operation of the mind; it consists in deception, intentially practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed; and it includes cases of the intentional and successful employment of any cunning, deception, or artifice used to circumvent, cheat, or deceive another. Falsehood is an ingredient thereof.'' The application filed in 1935 was not produced. Presumably it was in the State Land Office. No one connected with that office at the time of the trial, or previously, testified in the case. But the chancellor found that the application was filed in 1935 and that in 1935 Cummings did everything required of him to procure the patent, although the patent itself was not actually issued until fifteen days within the year 1936. We judicially know that patents must be signed by the State Land Commissioner, countersigned by the Governor and attested by the Secretary of State, and due record must be made of their issuance. Naturally, it often happens that considerable time will elapse from the filing of the application, with payment of the purchase price, and the actual issuance of the patent, due to press of work, absence of some of those who must sign or attest the patent, or for other reasons. We cannot say in this case that Cummings did not consider in his own mind that he had bought this land in 1935. We cannot say that he had deliberate, conscious intent to deceive or defraud the State. But it is argued, with force and ability, that the question has been settled otherwise in State v. Roell, 192 Miss. 873, at page 887, 7 So. (2d) 867, 870 by the statement, ''. . . and it would be difficult to conceive that any of the public lands can be acquired . . . by any person by means of an application under oath for more than one-quarter section of state forfeited

tax lands in one year . . . . without the purchaser being guilty of actual fraud within the meaning of chapter 309, Laws of 1940." That statement is not an adjudication of the question in this case for these reasons: First, the bill in that case was filed by the person claiming the land under the patent; here, it was filed by the State to cancel the patent; second, that the case was heard on demurrer to the bill, raising only the constitutionality of Chapter 309, Laws 1940; here the cause was heard upon proof and decided upon a finding of fact by the chancellor; and, third, even though the two cases were analagous in procedure and the issues involved, the unusual facts of this case might well establish the "difficult to conceive" case visualized in that opinion.

In passing upon the findings and conclusions of the chancellor, we should give due weight to the purpose of the law and the power and discretion vested thereby in the chancellor in dealing with such matters. The purpose of the Act was ". . . to stabilize and validate public land titles, and promote the private use and enjoyment of such land, to quiet title to same and to enable owners thereof to procure full right of ownership and title in fee simple thereto." Section 1316, Code 1942, in part reads: "The court is hereby granted large discretion and far reaching powers in the matter of establishing and fixing the validity of land patents issued by the state and title conveyed thereunder and the sound discretion of the court in deciding all such cases shall be the controlling factor in settling the issues where only state interests are involved." Section 1317 provides: ". . . but no patent heretofore issued shall be cancelled in such proceeding because of loss of the application papers to purchase said land, or because of errors or omissions or incorrect statements in said application, or other papers in connection with the sale of said land, such matters not constituting fraud as above defined." And Section 1321 reads: "This act shall be liberally construed to validate and quiet title to lands

heretofore passing under patent 'from the state and shall in no way be construed as repealing or limiting any other acts now existing in aid of such titles under .patents from the state.''

We cannot say the chancellor was manifestly wrong. Affirmed.

### On Suggestion of Error.

**L. A. Smith, Sr., J.,** delivered the opinion of the court on suggestion of error.

On the suggestion of error in this Court, appellant seeks to introduce new evidence by way of our alleged right to take judicial notice of a fact, evidenced by a receipt filed here for the first time. It was not before the trial court when the case was tried. It is presented to us in form of a certified copy from the records of the State Land Commissioner. In the first place, it is too late to represent such evidence here for the first time.

Being an appellate court, we take the record as it comes to us, and receive no new evidence here. Harvey v. Briggs, 68 Miss. 60, 8 So. 274, 10 L. R. A. 62; Witherspoon v. State ex rel. West, 138 Miss. 310, 103 So. 134; Williams v. J. E. Walton & Son et al., 202 Miss. 641, 32 So. (2d) 566.

In the next place, the evidence of the date of payment of the fee here is a factual transaction that must be proven as any other fact is ordinarily proven. It is not such a record as to which judicial notice will be taken by the courts. We do not take judicial notice of every paper, or bookkeeping entry, or similar matters in the various state departments. For instance, we cannot take judicial notice that a certain officer is a foreign corporation's statutory agent for service. This pertains to the office of the Secretary of State. Masonite Corporation v. Burnham et al., 164 Miss. 840, 146 So. 292, 91 A. L. R. 752. Courts cannot take judicial notice that Registers and

Receivers of land offices have not offered lands for sale purposes, pursuant to a statute authorizing such action, Bledsoe v. Doe ex dem. Little, 4 How. 13, 5 Miss. 13; nor of penitentiary records showing admission and discharge of prisoners. Essick et al. v. Essick, 175 Miss. 412, 167 So. 420.

The Suggestion of Error reargues other questions, carefully considered by us on the original submission here, and we cannot see that we committed error as to the same.

Suggestion of error overruled.