MASONITE CORPORATION *v.* GUY.

No. 39462 February 7, 1955 77 So. 2d 720

March 16, 1955 78 So. 2d 579

*Welch & Gibbes,* Laurel, for appellant.

*Wm. S. Murphy,* Lucedale; *E. C. Fishel,* Hattiesburg, for appellee.

Hall, J.

Appellant owns a large plant in the City of Laurel where it is engaged in the manufacture of Masonite board from pulpwood. The wood is first reduced to chips and by a steam treatment process these chips are reduced to wood fiber which is washed and pressed into several different types of board. An immense quantity of water is used in this process and much of it is used over and over. Four large settling ponds, covering an aggregate of about 185 acres, are used to impound the surplus effluent. This effluent contains a heavy pollution of wood sugar which has a tendency to ferment and reduce the oxygen content of the water to such extent that it will not sustain aquatic life.

From time to time the effluent is released from the settling ponds and allowed to flow into Tallahala Creek, a non-navigable stream nearby, and which runs in a general southerly direction until it empties into Leaf River, which also flows in a general southerly or south-easterly direction. Above the junction of these two streams Leaf River flows by the City of Hattiesburg. Several miles below their junction Leaf River and the Chichasawhay River join near Merrill, Mississippi, to form the Pascagoula River.

Appellee is a commercial fisherman engaged in catching non-game fish and he is also engaged in catching

minnows on a large scale and in selling them at both wholesale and retail. For his minnow business he has built large concrete vats and installed artesian wells on the banks of the Pascagoula. The minnows are caught in glass traps in the Pascagoula River and transferred to these concrete vats.

Appellee brought suit and recovered judgment against appellant for the loss of minnows which died in his traps as a result of alleged pollution of the stream by the effluent from appellant's plant. Hence this appeal.

It is first contended by appellant that the evidence is insufficient to show that the minnows died as a result of pollution emanating from its plant. For appellee it was shown that the water in appellant's settling ponds was a distinctive dark brown color and that this colored water came all the way down Tallahala Creek and flowed into Leaf River and thence into Pascagoula River, and that it was not found in the Chichasawhay River nor in Leaf River above the point where Tallahala Creek emptied into it. It was also shown by appellee and his witnesses that the Pascagoula River at the point in question was full of wood fiber to such extent that it settled upon the sand bars, logs, limbs and the like in the Pascagoula as well as up the streams to appellant's plant and that appellee's traps became stopped up with this wood fiber and that the gills of the dead minnows were impregnated with it. Samples of this fiber were taken from the traps and from the Pascagoula River. Appellee and his witnesses traveled all the way up these streams to appellant's plant and picked up samples of the fiber along the way up to and including the point where appellant's settling ponds empty into Tallahala, and the evidence shows that no fiber was found above that point. Two of appellant's expert witnesses were shown these samples while testifying and admitted that they appeared to be wood fiber from the Masonite plant. Two witnesses for appellant testified that the effluent

was not permitted to flow from the settling ponds into Tallahala except during the high water season which is usually in December and January, and that the amount released was insufficient to destroy aquatic life. The damage in question was shown to have been sustained in the months of May and June of 1950 and 1953 and the conditions described by appellee's witnesses prevailed in those months. For appellant it was also shown that the sewage from the City of Laurel, including the State Charity Hospital and also one or two industrial plants in Laurel emptied into Tallahala Creek as well as the sewage from the City of Ellisville and a State School located there. It was also shown that the sewage from the City of Hattiesburg and two industrial plants at that place emptied into Leaf River several miles above its junction with Tallahala. After a careful consideration of the voluminous record in this case we are of the opinion that the evidence was sufficient to make an issue for decision by a jury as to whether the effluent from appellant's plant caused or partially caused appellee's damage and that the lower court did not err in submitting the issue to the jury.

 It was shown by appellant that pursuant to the provisions of Chapter 381, Laws of 1946, there was issued to appellant on November 26, 1946, a certificate of the State Game and Fish Commission, as follows: "This is to certify that Masonite Corporation of the City of Laurel, County of Jones, is complying this date with the Rules and Regulations of The State Game and Fish Commission on Industrial Waste Effluent." It is contended that this certificate of 1946 is conclusive evidence that appellant did not pollute these streams in 1950 and 1953. With that position we do not agree. The fact that appellant constructed its settling ponds in accordance with the regulations of the commission and agreed not to release its effluent therefrom except in times of high water and then only in such quantities as not to

injure fish life does not grant a perpetual license to violate its agreement with immunity, and the evidence here is sufficient to show that it did release its effluent in such quantities as to pollute these streams, and to make a jury issue on that question.

It is contended finally that the lower court erred in the granting to appellee of one of its instructions to the jury and in the refusal of two instructions requested by appellant. Appellee's granted instruction was that if the jury should believe from a preponderance of the evidence that the defendant did with others contribute to the plaintiff's alleged loss by polluting the streams with fibrous matter or waste and that such pollution contributed to the plaintiff's loss, if any, then it is the sworn duty of the jury to find for the plaintiff, for such sum as from the evidence it believes him to have suffered loss. The two instructions refused to defendant were to the effect that if the damages were caused in part by Masonite Corporation and in part by persons or corporations other than Masonite, then Masonite would be liable only for the portion of the total damages which the jury might find was caused by it.

 █ We think the lower court was in error in granting the plaintiff's instruction on damages and in refusing those requested by defendant. In Masonite Corporation v. Burnham, 164 Miss. 840, 854, 146 So. 292, 91 A. L. R. 752, we held that ''* * * where different parties discharged sewage and filth into a stream which intermingled and caused an actionable nuisance, they are not jointly liable for damages where there is no common design or concert of action, but each is liable only for his proportion of damages.'' █ In Masonite Corporation v. Steede, 198 Miss. 530, 551, 21 So. 2d 463, 23 So. 2d 756, we followed the Burnham case and said: ''It appears from the evidence that effluent was cast into this river by others acting independently of the appellant which it claims contributed to the pollution of the river

and to the death of the fish. If this is true, the appellant is only responsible for its proportionate part of the damage inflicted.'' The issue on the quantum of damages in the case at bar should have been so limited and for this error the judgment of the lower court is reversed and the cause remanded for a new trial on the issue of damages only.

Reversed and remanded.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.

ON MOTION TO RETAX COSTS

HALL, J.

Appellee has filed a motion to retax the costs in this case. The motion is in two parts which we shall consider separately.

1. The first division of the motion is to disallow the costs of the court reporter against appellee for including in his transcript forty-two pages of the arguments of counsel. The motion requests that this part of the transcript be taxed against appellant. Appellee says that he did not request the court reporter to take down and transcribe the argument. The court reporter certifies that it was requested by counsel and does not state which counsel. Appellant has filed a response to the motion wherein it confesses the motion and agrees that an order may be entered accordingly. The court reporter's fees for taking down and transcribing the argument of counsel will therefore be taxed against appellant.

2. The second portion of the motion is directed to the clerk's fees for copying into the record pages 54 to 72, inclusive, which consist of motions and orders for subpoenas duces tecum, and subpoenas duces tecum, and other subpoenas for witnesses and pages 76 to 90, inclusive, which contain other subpoenas for witnesses,

and page 75 which is merely a list of the jury, and pages 129 and 130 which is merely a bill from a cafe for meals for the jury. These items aggregate 37 pages of the record which add nothing thereto and should never have been copied therein. By Rule 2 of the Revised Rules of this Court we have specified in plain terms what should and should not be copied into the record. We are daily confronted with records from all parts of the State where there has been no effort to comply with Rule 2 in making up records for appeal. We called attention to this less than two years ago in the case of Carroll Notion Co. v. Neville, 217 Miss. 699, 714-715, 65 So. 2d 146-147. See also Y. & M. V. R. R. Co. v. Levy, 147 Miss. 211, 113 So. 325; U. S. F. & G. Co. v. White, 106 Miss. 28, 63 So. 329.

Motion sustained.

*McGehee, C. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.